577 N.W.2d 667 (1998)
457 Mich. 865
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Jerry Lorenzo BASS, Defendant-Appellee.
Docket No. 109511, COA No. 178342.
Supreme Court of Michigan.
May 6, 1998.

ORDER
On order of the Court, leave to appeal having been granted and this case having been briefed and argued by counsel, the order of August 4, 1997 which granted leave to appeal is VACATED and leave to appeal is DENIED. Our order denying leave to appeal is based on the understanding that the Court of Appeals determined that the impediments of the court rule constitute state interference with appellate counsel's ability to provide effective assistance, People v. Mitchell, 454 Mich. 145, 154-155, 560 N.W.2d 600 (1997), and not on a finding that appellate counsel was ineffective for failing to comply with a minimum standard for assigned counsel as such a holding would be contrary to People v. Reed, 449 Mich. 375, 385-386, 535 N.W.2d 496 (1995). Therefore, we VACATE the decision of the Court of Appeals insofar as it may be read to conclude that compliance with the minimum standards for assigned appellate counsel is constitutionally required. The stay of the precedential effect of the Court of Appeals opinion imposed by the orders of June 19 and August 4, 1997 is VACATED.
BOYLE, Justice, dissents and states as follows:
I dissent from the Court's order dismissing this appeal and from its amendment (without notice) of MCR 6.425(F)(2)(a)(i) that deletes the requirement that good cause be shown for the preparation of a transcript of voir dire at public expense "unless the defendant challenged the jury array, exhausted all peremptory challenges, was sentenced to serve a term of life imprisonment without the possibility of parole, or shows good cause." The combined effect of these actions, at a minimum, (1) employs a standard for effective assistance of counsel that is not required by the supreme law of the land or that of this state; (2) repeals a court rule without notice that was adopted only four years ago after publication, comment, and extensive study; (3) summarily implements court rule changes, despite our recent order announcing public hearings prior to amendment, see Administrative Order No.1997-11,[1] and (4) requires *668 the taxpayers of local units of government to shoulder the burden of the costs of voir dire transcripts in all appeals, although they are not legally compelled to do so.
Other than an ambiguous reference to People v. Mitchell, 454 Mich. 145, 154, 560 N.W.2d 600 (1997), where we acknowledged the existence of a "prophylactic approach ... applied to cases in which the court or the state directly interferes with the attorneyclient relationship by preventing counsel from rendering assistance," the Court offers no explanation for its apparent conclusion that the rule adopted four years ago on the recommendation of the Michigan Judges Association is either unlawful or bad policy, or for its conclusion that there is a need for immediate action. To be sure, the Court may take such action in the same sense that a jury may return a not guilty verdict in the face of overwhelming evidence of guilt. However, the taxpayers of local units of government are today made responsible for what the Michigan Trial Judges Association characterized as the substantial costs of transcribing all voir dire. Whether the reason for the Court's action is policy or law, further explanation is surely in order to avoid the implication that the Court is merely engaged in judicial activism. Const. 1963, art. 6, § 6.
It is clear that it has never been the law, either federally or in Michigan, that an indigent defendant is automatically entitled to transcripts of voir dire at public expense. The United States Supreme Court has held that a full transcript is not constitutionally required by either equal protection or due process. Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). This state has a proud history of providing services to indigents long before there was any constitutional compulsion, but it has never been held that the state may not condition certain services on a showing of cause. That a wealthy defendant may employ investigators, for example, does not automatically entitle the indigent to publically paid investigators to locate witnesses any more than it automatically entitles payment for the production of out of state witnesses.
The equality principle as more recently explicated by the Supreme Court puts forth a three-factor test with the common theme of meaningful access to justice and an adequate opportunity to present claims, Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), in other words, a classic balancing approach. See also People v. Loyer, 169 Mich.App. 105, 126, 425 N.W.2d 714 (1988) (T. K.BOYLE, J., dissenting). Because the Court's action today eschews consideration of these principles, it avoids balancing the magnitude of the risk to the indigent defendant or the adversary process, the utility of the minimal good-cause requirement, the governmental interest in economy, and the timely production of transcripts on appeal.[2] Indeed, even with the transcripts having been provided to defendant Bass, it appears, as it did in virtually every case of the thousands we reviewed before the rule excluding automatic production of voir dire was adopted, that the voir dire did not contain a basis on which to posit a claim of error requiring reversal.
The Court provides no rationale for its reference to my discussion of the guiding principles for claims of ineffective assistance of counsel in Mitchell, supra. There, we recognized that "prejudice is presumed" in cases where the "`circumstances ... are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified'...." Id. at 154-155, 560 N.W.2d 600. Given that the United States Supreme Court rejected the assertion that full transcripts are constitutionally required by equal protection or due process in Draper, supra, the Court's intimation of such a requirement on the basis of the Sixth Amendment is inventive, but misguided and unacceptable in ultimate terms.
*669 The cases we recognized in Mitchell as supportive of a categorical presumption of ineffective assistance all involved egregious official activity to the extent that the state "`impair[ed] the accused's enjoyment of the Sixth Amendment guarantee by disabling his counsel from fully assisting and representing him.'" Id. at 154, n. 11, 560 N.W.2d 600 (emphasis added). The tenor of the Court's order implies that it views the court rule as disabling appellate counsel because appellate counsel may not be able to identify errors giving rise to a finding of good cause without first reviewing the transcript. However, as noted below, such inability is likely to be ruled good cause where the defendant alleges by affidavit an inability to identify errors through cooperation with trial counsel, either because counsel is uncooperative or lacks sufficient recollection of the voir dire. Of course, where trial counsel recalls claims of appealable error, an affidavit to that effect would also likely establish good cause to the trial judge's satisfaction. Thus, the rule does not disable counsel; it merely creates a minimal procedural hurdle to establish entitlement to the voir dire transcript.
As described in Mitchell, each of the principal cases supporting the approach the majority weakly references as its authority for summary action here involved court orders or statutes that absolutely prevented counsel from conferring with their clients during trial recesses, from eliciting testimony from the defendant, or from presenting a closing argument on the defendant's behalf. Id. These cases have nothing to do with implementing a minimal procedural burden to justify an expenditure of public funds. They involve absolute prohibitions on conduct critical to the defense.[3] Moreover, like the Supreme Court in United States v. Cronic, 466 U.S. 648, 667, 104 S.Ct. 2039, 2051, 80 L.Ed.2d 657 (1984), this Court in Mitchell rejected extension of the categorical approach where "the claim is that counsel's preparation was inadequate."Id. at 154, n. 11, 560 N.W.2d 600.
The Court's reference to Mitchell here is fallacious for two easily identified reasons: First, defendant's claim that the court rule deprives him of his Sixth Amendment right to the effective assistance of counsel, like Mitchell's claim that counsel's thirty-day suspension before trial denied him the same, boils down to a claim that counsel was presumptively unable to prepare an appeal (Bass) or defense (Mitchell). Because we rejected the categorical approach to such claims in Mitchell, the Court's reliance thereon in this case is misplaced. Second, and more fundamentally, the categorical approach is inapplicable where, as here, the case involves a mere procedural threshold, not a prohibitive rule that infects the case by effecting an absolute ban on some task crucial to counsel's ability to effectively advocate his client's interests.[4]
Nearly four years have passed since the amendments of the rule. Presumably, today's action is explained by changes in the membership of this Court or a change of mind on the part of a justice or justices. It may be that the administrative burden regarding augmentation of the record at the trial court level does not justify the limited good-cause showing as a matter of policy. See People v. Shambatuyev, 50 Cal.App.4th 267, 57 Cal.Rptr.2d 733 (1996). It may be that other experience in applying the rule demonstrates that the rule needs modification, such as a provision requiring the clerk to make a record indicating exhaustion of juror challenges. It may be that the Court needs to direct its attention to the responsibility of trial counsel to cooperate with appellate counsel as part of trial counsel's obligation to the client. In all events, it would *670 seem that if reports of trial counsels' lack of cooperation are a problem, an affidavit to that effect would be "good cause."
On the other hand, it may be that a majority of the Court has now simply opted for the line of least resistance and accepted the view that the minimal procedural burden of alleging good cause for the voir dire transcripts is too onerous to impose on assigned appellate counsel. My point is only that there should be some justification in law or policy for this "about face" as a matter of self discipline, if not as a matter of loss of face. Since it has not and cannot be demonstrated that the result is legally required, the Headlee Amendment, Const. 1963, art. 9, § 29, might suggest that, because this Court requires transcriptions as a matter of policy, "any necessary increased costs" incident to the automatic provision of voir dire transcripts should be borne by the Court rather than funding units supported by local taxpayers.
I dissent from both actions taken today.
WEAVER, J., joins in the dissenting statement of Justice BOYLE.
NOTES
[1] AO 1997-11 also provides for public comment after the fact if "immediate action is required":

If no public hearing has been held before a rule is adopted or amended, the matter will be placed on the agenda of the next public hearing, at which time the Supreme Court will hear public comment regarding whether the rule should be retained or amended.
There is no distinction in the order among rules amended by administrative procedure, by opinion of the Court, or summarily by order.
[2] The defendant in the instant case did not challenge the array, exhaust his challenges, or attempt to show good cause. Defendant does not assert by affidavit that he attempted to obtain information from trial counsel regarding voir dire.
[3] In order for a case to fall into the categorical approach, it must involve "a structural defect which defies harmless error analysis and requires automatic reversal." Jones v. Vacco, 126 F.3d 408, 416 (C.A.2, 1997). That is not the case here.
[4] The Court's reference to Mitchell could also be interpreted as a reference to "the rare cases in which the circumstances are such that `although counsel is available to assist the accused ..., the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate....' " Id. at 155, 560 N.W.2d 600. However, a procedural burden as a condition on publicly subsidized transcript preparation is not a "circumstance ... of such `magnitude' ... [that] an `actual breakdown of the adversarial process'" occurs by virtue of its existence. Id.