PEOPLE v NEAL

Docket No. 108016. Decided December 15, 1998. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of grant-
ing leave, remanded the case to the circuit court for further
proceedings.

Bobby A. Neal was convicted by a jury in the Genesee Circuit Court,
Judith A. Fullerton, J., of possessing less than fifty grams of heroin
with intent to deliver. Thereafter, he pleaded guilty of being an
habitual offender. Because the defendant is indigent, the circuit
court appointed appellate counsel and ordered preparation of tran-
scripts. Before the transcripts were prepared, the Supreme Court
amended applicable court rules excepting preparation of a voir dire
transcript in certain circumstances. The transcripts eventually pre-
pared did not include the jury voir dire. Appellate counsel chal-
lenged the voir dire transcript exception and sought a new trial on
due process grounds. The trial court denied the motion for a new
trial, and, on the basis of the amended court rules, also denied the
request for the voir dire transcript. The Court of Appeals, D. E.
HOLBROOK, JR., P.J., and SAAD and W. J. GIOVAN, JJ., affirmed the
defendant's conviction in an unpublished opinion per curiam,
observing that no error was alleged during voir dire so as to neces-
sitate a copy of the transcript to vindicate a substantial right
(Docket No. 174643). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and
Justices BRICKLEY, CAVANAGH, KELLY, and TAYLOR, the Supreme Court
held:

The defendant has a limited right to appeal on the basis of issues
that may arise from the jury voir dire; thus, remand to the circuit
court is required for preparation of the transcription of the jury
voir dire.

1. In response to an appeal in *People v Bass (On Rehearing)*,
223 Mich App 241 (1997), the Supreme Court set aside the 1994
changes in the court rules. 457 Mich lxxxvii, 866 (1998). The rules
again require that a full transcript be prepared for an indigent
appellant in a criminal case. That decision is to be given limited
retroactive effect. Specifically, *Bass* and the court rule amend-
ments apply to all cases in which a transcript is ordered on and

after May 6, 1998, and to all cases in which a previously ordered transcript has not yet been filed by the court reporter. In cases in which a transcript was ordered before May 6, 1998, retroactive application is to be applied with regard to defendants who preserved the issue by timely requesting a voir dire transcript or timely challenging the applicability, legality, or constitutionality of the 1994 court rule amendments.

2. In this case, because the defendant preserved the issue by ordering a transcript before the effective date of the 1994 rule change and then protested in writing when the jury voir dire was omitted, remand to the circuit court is required for transcription of the jury voir dire.

Remanded.

Justice BOYLE, joined by Justice WEAVER, dissenting, stated that the former court rule, which required a showing of good cause in order to receive a voir dire transcript on appeal, did not constitute egregious official activity that impaired the accused's enjoyment of the Sixth Amendment guarantee by disabling his counsel from fully assisting and representing him. Application of the former rule did not represent a situation in which prejudice could be presumed under *People v Mitchell*, 454 Mich 145 (1997). Courts have consistently held that in order for a defendant to demonstrate that a state's failure to furnish a voir dire transcript constitutes an unconstitutional denial of a fair and effective appeal, the defendant must demonstrate the prejudicial effect of the unfurnished transcripts. There was no showing of prejudice in *Bass*, even after defendant received the transcript, nor is there such a showing in this case. Notwithstanding the fact that no substantive right has been violated, the Court in this case not only summarily confirms the holding of *Bass*, that local funding units must provide voir dire transcripts to every appellant irrespective of good cause, but also holds that taxpayers must now retroactively shoulder this burden.

If there is no violation of a substantive right, the Court's decision in *Bass* is a legislative and not a judicial activity, and it follows that retroactive application of that policy conclusion likewise cannot be other than legislative activity. Without a statement of the reasons in law why a certain result is required, the Court acts without authority, and its actions may not properly be considered the legitimate products of a court of law.

The Court extends the newly created right to a voir dire transcript to those defendants who preserved the issue as of May 6, 1998, without clarifying for the circuit court judges and the Court of Appeals what constitutes timely request and preservation. It does not indicate whether any one, some, or all of such actions will

constitute preservation. It can be safely hypothesized that any one might be held to do so, and that confusion will be the order of the day until the system digests the permutations of the decision. The Court's action in this case and in *Bass* itself eschews any balancing of the magnitude of the risk to the indigent defendant or the adversary process, consideration of the utility of the minimal good-cause requirement, the governmental interest in economy, the timely production of transcripts on appeal, and the burden on trial and appellate courts.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, *Donald A. Kuebler*, Chief, Research, Training and Appeals, and *Herman Marable*, Assistant Prosecuting Attorney, for the people.

Bobby Arnol Neal in propria persona.

PER CURIAM. The defendant was convicted in circuit court of a drug offense. He appealed. In accordance with court rules then in effect, the court reporter prepared a transcript that omitted the jury voir dire. The Court of Appeals later affirmed the defendant's conviction. We remand the case to the circuit court for transcription of the voir dire, and direct that the defendant has a limited right to appeal on the basis of issues that may arise from the voir dire.

I

Following a July 1993 raid on his house, the defendant was charged with possessing less than fifty grams of heroin with intent to deliver.[1] In February 1994, a jury convicted him of the charged offense. He

[1] MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). The initial charges also included two weapons offenses, which were dismissed at the preliminary examination.

then pleaded guilty of being an habitual offender.[2]
Five weeks later, the defendant was sentenced to an
enhanced term of five to twenty-five years in prison.

The defendant is indigent, and so the circuit court
appointed an attorney to represent him on appeal.
The April 1994 appointment order indicates that the
transcripts, including the trial transcript, were
ordered from the court reporter. In May 1994, the
court reporter filed her certificate, confirming that
the transcript had been ordered. She indicated that it
would be furnished in late June 1994.

On the day the reporter filed her certificate, this
Court entered an order amending three court rules.[3]
Effective July 1, 1994, the amended rules provided
that a transcript of the jury voir dire was not to be
prepared "unless the defendant challenged the jury
array, exhausted all peremptory challenges, was sen-
tenced to serve a term of life imprisonment without
the possibility of parole, or shows good cause . . . ."

In the present case, the court reporter finished the
trial transcript on July 20, 1994, and filed it several
days later. The transcript does not include the jury
voir dire.

In November 1994, appointed counsel asked for
permission to withdraw because of other commit-
ments. Substitute counsel was appointed in early
December.

---

[2] The defendant has numerous prior convictions that are directly or
indirectly related to his heroin usage. The information gave notice that he
was subject to sentence enhancement under MCL 333.7413; MSA
14.15(7413), and a supplemental information alleged that he was an habit-
ual offender. MCL 769.12; MSA 28.1084.

[3] The order amended MCR 6.425(F)(2)(a)(i) and 7.210(B)(1)(a), and
added MCR 6.433(D). 445 Mich cix (1994).

Shortly after his appointment, new counsel filed on the defendant's behalf a motion for new trial, in which he raised several issues. One argument was that "[MCR] 6.425(F)(2), as amended, which excepts transcripts of the voir dire is an unconstitutional deprivation of due process." Before the hearing on the motion, the defendant filed a written request for the voir dire transcript. He acknowledged that he did not meet the qualifications stated in the amended court rules, but said that he believed the limitation to be unconstitutional.

The circuit court denied the motion for new trial. With regard to the defendant's request for the voir dire transcript, the circuit court relied on the court rules, as amended in 1994.

In his brief to the Court of Appeals, the defendant framed five issues. Among them was a claim that it was error to deny him a transcript of the jury voir dire. However, he did not raise a specific objection to anything that took place during the voir dire.

The Court of Appeals affirmed the defendant's conviction.[4] Concerning the defendant's claim that it was error to deny him a transcript of the voir dire, the Court of Appeals observed that he "alleges no error during voir dire such that a copy of the transcript was necessary to vindicate any substantial right."

Appearing in propria persona, the defendant filed a delayed application for leave to appeal in this Court. We held the application in abeyance,[5] pending resolu-

---

[4] Unpublished opinion per curiam, issued October 29, 1996 (Docket No. 174643).

[5] Order of the Supreme Court, entered September 30, 1997 (Docket No. 108016).

tion of a case in which we previously had granted
leave to appeal. *People v Bass*, 456 Mich 851 (1997).

As explained below, we issued a final order in *Bass*
earlier this year, and thus the present application
again comes before us.

II

In *People v Bass* (*On Rehearing*), 223 Mich App
241, 255-260; 565 NW2d 897 (1997), the Court of
Appeals rejected a claim that the 1994 court rule
amendments violated an indigent defendant's consti-
tutional right to equal protection. However, the Court
found that excluding the jury voir dire from the trial
transcript could interfere with the defendant's right to
effective assistance of appellate counsel. The Court of
Appeals explained:

> In *Hardy v United States*, 375 US 277; 84 S Ct 424; 11 L
> Ed 2d 331 (1964), the Court held that, in the federal system,
> where a defendant has an appeal of right and Congress has
> enacted statutes to buttress that right, the entire transcript
> must be produced when appointed appellate counsel did
> not serve as trial counsel. The Court reasoned as follows:
>
> "*But when, as here, new counsel represents the indigent
> on appeal, how can he faithfully discharge the obligation
> which the court has placed on him unless he can read the
> entire transcript? His duty may possibly not be dis-
> charged if he is allowed less than that.* For Rule 52(b) of
> the Federal Rules of Criminal Procedure provides: 'Plain
> errors or defects affecting substantial rights may be noticed
> although they were not brought to the attention of the
> court.' The right to notice 'plain errors or defects' is illusory
> if no transcript is available at least to one whose lawyer on
> appeal enters the case after the trial is ended. [*Id.* at 279-
> 280 (emphasis added).]"
>
> The *Hardy* Court held that, under the circumstances of the
> case, the defendant was entitled to transcripts of the court's

charge to the jury and the testimony presented by the prosecution and the defense. *Id.* at 282. The Court relied on federal law and explicitly declined to consider whether a complete transcript was constitutionally required. *Id.*

We find that the remarks of the *Hardy* Court are equally applicable to the circumstances of this case. The standards for appointed appellate counsel[6] require that counsel assert claims of error that are supported by the record and possess arguable legal merit. In order to faithfully discharge the duties imposed by the Appellate Defender Commission and the Supreme Court, counsel must have access to transcripts of all the proceedings so that all issues of legal merit can be raised. Although appellate counsel could contact trial counsel and inquire about voir dire, information obtained from trial counsel is not a substitute for a transcript because trial counsel's memory may be faulty, trial counsel may not be aware that an error occurred during voir dire, *id.* at 280, n 3, or trial counsel may be the target of the defendant's claim of error. We therefore conclude that a transcript of voir dire must be provided in all cases where appointed appellate counsel was not the indigent defendant's trial counsel. Accordingly, in this case, we find that defendant is entitled to a transcript of the voir dire testimony, to determine if any justifiable claims of error occurred during the voir dire. [223 Mich App 259-260.]

This Court issued three orders in *Bass*. First, we stayed its precedential effect. 455 Mich 851 (1997). Then we granted leave to appeal and continued the stay. 456 Mich 851 (1997). Finally, we vacated the grant order and denied leave to appeal.[7] 457 Mich 866 (1998). In that order, we stated:

Our order denying leave to appeal is based on the understanding that the Court of Appeals determined that the

---

[6] Administrative Order No. 1981-7, 412 Mich lxv, lxxxiv-xcii, and Administrative Order No. 1985-3, 421 Mich lxvii.

[7] The third order also vacated the stay.

impediments of the court rule constitute state interference with appellate counsel's ability to provide effective assistance, *People v Mitchell*, 454 Mich 145, 154-155 [560 NW2d 600] (1997), and not on a finding that appellate counsel was ineffective for failing to comply with a minimum standard for assigned counsel as such a holding would be contrary to *People v Reed*, 449 Mich 375, 385-386 [535 NW2d 496] (1995). Therefore, the decision of the Court of Appeals insofar as it may be read to conclude that compliance with the minimum standards for assigned appellate counsel is constitutionally required is vacated. The stay of the precedential effect of the Court of Appeals opinion imposed by the orders [reported at 455 Mich 851 and 456 Mich 851] is vacated.

On the day of our third order in *Bass*, we set aside the July 1, 1994 changes in MCR 6.425(F)(2)(a)(i), 6.433(D), and 7.210(B)(1)(a). 457 Mich lxxxvii (1998). The rules thus require again that a full transcript be prepared for an indigent appellant in a criminal case.

### III

As one can see from the language quoted above, *ante*, pp 77-78, the opinion of the Court of Appeals in *Bass* appears to have more than one basis. However, our eventual denial order effectively set aside any rationale other than "that the impediments of the court rule constitute state interference with appellate counsel's ability to provide effective assistance." 457 Mich 866. In that light, we consider whether the renewed requirement that an indigent defendant receive a transcript of the jury voir dire should be retroactive.[8]

---

[8] Purely procedural changes that result from amendments of the court rules are normally prospective from the effective date of the amendment. The rules at issue in the present case affect significant rights of an indi-

On prior occasions, we have considered whether to give retroactive effect to a principle of law. For instance, in *People v Doyle*, 451 Mich 93, 104; 545 NW2d 627 (1996),[9] we embraced an earlier statement[10] that "the general rule is that judicial decisions are to be given complete retroactive effect," since "complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law." Thus our holding in *Doyle* was that a decision of this Court[11] could be applied retroactively to conduct that took place before the release of the opinion in that case.

We undertook a detailed analysis of retroactivity principles earlier this year in *People v Sexton*, 458 Mich 43; 580 NW2d 404 (1998). Again faced with an issue whether a decision[12] should be given retroactive application, we first confirmed that this Court had not based its decision on constitutional principles. 458 Mich 53-54. We then examined the retroactivity question in light of the three-part test stated in *People v Hampton*, 384 Mich 669; 187 NW2d 404 (1971).

As we noted in *Sexton*, the three inquiries concern (a) the purpose of the new rule, (b) the general reliance on the old rule, and (c) the effect of retroactive application of the new rule on the administration of justice.

---

gent appellant, however, and so we consider the retroactivity question under principles employed in more substantive contexts.

[9] Cert den 519 US 873 (1996).

[10] *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986).

[11] *People v Bewersdorf*, 438 Mich 55; 475 NW2d 231 (1991), cert den sub nom *Johnson v Michigan*, 502 US 1111 (1992), reh den 503 US 999 (1992).

[12] *People v Bender*, 452 Mich 594; 551 NW2d 71 (1996), reh den 453 Mich 1204 (1996).

In the present case, (a) the purpose of the new rule is to protect a constitutional right,[13] (b) there apparently has been widespread reliance on the 1994 rule amendments,[14] and (c) full retroactive application, requiring supplemental proceedings in nearly all criminal appeals filed over a four-year period, would have a substantial effect on the administration of justice.

In light of those considerations, we are persuaded that the Court of Appeals decision in *Bass*, as clarified in our 1998 order (457 Mich 866), is to be given limited retroactive effect. Specifically, *Bass* and the court rule amendments apply to all cases in which a transcript is ordered on and after May 6, 1998 (the date of our *Bass* order and the order amending the court rules) and all cases in which a previously ordered transcript has not yet been filed by the court reporter. In cases in which a transcript was ordered before May 6, 1998, we further grant retroactive application with regard to defendants who preserved the issue by timely requesting a voir dire transcript or timely challenging the applicability, legality, or constitutionality of the 1994 court rule amendments.[15]

The defendant in the present case preserved the issue. He ordered the transcript before the effective

---

[13] We found that "the impediments of the court rule constitute state interference with appellate counsel's ability to provide effective assistance." 457 Mich 866. We caution, however, that we have simply found the "impediments of the court rule" to be a burden on the constitutional right of effective assistance of counsel—it does not necessarily follow that any particular individual has been deprived of effective assistance or that appellate proceedings conducted without a voir dire transcript are fundamentally flawed.

[14] No one has suggested that the circuit court failed to implement fully the 1994 rule amendments.

[15] We will not attempt today to list every procedural path by which the issue may be preserved.

date of the 1994 rule change, and then protested in writing when the jury voir dire was omitted. He subsequently argued the point in a motion for new trial in circuit court, and raised the issue in briefs to the Court of Appeals and this Court.

For these reasons, we remand this case to the circuit court for transcription of the jury voir dire. After the defendant receives a copy of that transcript, he may within twenty-eight days file in the Court of Appeals an appeal of right relating only to issues, if any, arising from the voir dire. In all other respects, leave to appeal is denied. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, KELLY, and TAYLOR, JJ., concurred.

BOYLE, J. I dissent. The Court today retroactively applies the order in *People v Bass*[1] and the court rule announced May 6, 1998, although there was no direct finding in *Bass* that any substantive right of a defendant, constitutional, statutory, or otherwise, had been violated.

Other than an ambiguous reference in *Bass* to *People v Mitchell*, 454 Mich 145, 154; 560 NW2d 600 (1997), where we acknowledged in dicta the existence of a "prophylactic approach . . . applied to cases in which the court or the state directly interferes with the attorney-client relationship by preventing counsel from rendering assistance," the Court offered no explanation for its conclusion in *Bass*, nor does it do so today. As I observed in dissent to the Court's order in *Bass*, the Court's reference to *Mitchell* would not support a finding of ineffective assis-

---

[1] 457 Mich 866 (1998).

tance of counsel, had it been made. In *Mitchell*, we recognized that "prejudice is presumed" in cases where the " 'circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified' . . . ." *Id.* at 154-155.

A categorical presumption of ineffective assistance involves egregious official activity that " 'impair[s] the accused's enjoyment of the Sixth Amendment guarantee by disabling his counsel from fully assisting and representing him.' " *Id.* at 154, n 11. The former rule did not disable counsel by erecting a bar to a task crucial to effective advocacy; it merely created a minimal procedural hurdle to establish entitlement to the voir dire transcript.

The cases weakly referenced by the majority as authority for summary action in *Bass* involved court orders or statutes that absolutely prevented counsel from conferring with their clients during trial recesses, from eliciting testimony from the defendant, or from presenting a closing argument on the defendant's behalf. *Id.* These cases have nothing to do with implementing a minimal procedural burden to justify an expenditure of public funds. They involve absolute prohibitions on conduct critical to the defense. Thus, the court's action in *Bass* and in its holding today is contrary to the Supreme Court's holding in *United States v Cronic*, 466 US 648, 667; 104 S Ct 2039; 80 L Ed 2d 657 (1984), and to our own decision in *Mitchell, supra*, in which we rejected extension of the categorical approach where "the claim is that counsel's preparation was inadequate." *Id.* at 154, n 11. The categorical approach is inapposite unless there has been action which creates "a structural defect which defies

harmless error analysis and requires automatic reversal." *Jones v Vacco*, 126 F3d 408, 416 (CA 2, 1997). That is not the case here.[2]

The fact that the majority did not find a violation of a substantive right in *Bass* is attributable to the fact that there is no precedent or legal analysis that would support a holding that an indigent appellant is entitled to a transcript of voir dire at public expense on appeal absent a showing of good cause.[3] *Schwander v Blackburn*, 750 F2d 494, 497 (CA 5, 1985); see also Judge Posner's analogous reasoning in the context of deportation proceedings in *Ortiz-Salas v Immigration & Naturalization Service*, 992 F2d 105, 106-107 (CA 7, 1993). As the United States Supreme Court long ago explained in *Draper v Washington*, 372 US 487, 495; 83 S Ct 774; 9 L Ed 2d 899 (1963):

> [P]art or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances.[4]

---

[2] The Court's reference to *Mitchell* could also have been interpreted as a reference to "the rare cases in which the circumstances are such that 'although counsel is available to assist the accused . . . the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate . . . .' " *Id.* at 155. However, a procedural burden as a condition on publicly subsidized transcript preparation is not a "circumstance[] . . . of such 'magnitude' . . . [that] an 'actual breakdown of the adversarial process' " occurs by virtue of its existence. *Id.*

[3] The defendant in the instant case did not challenge the array, exhaust his challenges, or attempt to show good cause. Defendant does not assert by affidavit that he attempted to obtain information from trial counsel regarding voir dire.

[4] The equality principle as more recently explicated by the Supreme Court puts forth a three-factor test with the common theme of meaningful access to justice and an adequate opportunity to present claims, *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), in other words, a classic balancing approach. See also *People v Loyer*, 169 Mich App 105,

Courts have consistently held that in order for a defendant to demonstrate that a state's failure to furnish a voir dire transcript (or even a complete trial transcript) constitutes an unconstitutional denial of a fair and effective appeal, the defendant must demonstrate the prejudicial effect of the unfurnished transcripts. See *Moore v Carlton*, 74 F3d 689, 693 (CA 6, 1996); *Bransford v Brown*, 806 F2d 83 (CA 6, 1986); *White v Florida Dep't of Corrections*, 939 F2d 912, 914, n 4 (CA 11, 1991); *Mullen v Blackburn*, 808 F2d 1143, 1146 (CA 5, 1987). There was no showing of prejudice in *Bass*, even after defendant received the transcript, nor is there any such showing here. In fact, in this case, counsel conceded that he could not demonstrate good cause for transcription of the voir dire. On these facts, "even if [defense] counsel could have obtained the transcripts, we have before us not even a modicum of evidence that the transcripts would have revealed reversible error." *Bransford,* 806 F2d 87.

Notwithstanding the fact that no substantive right has been violated, the Court today not only summarily confirms the holding of *Bass* that local funding units must provide voir dire transcripts to every appellant, irrespective of good cause, but also holds that taxpayers must now retroactively shoulder this burden. One premise underlying retroactivity is that the law declared in judicial decisions has always been the law. *Linkletter v Walker*, 381 US 618, 622-623; 85 S Ct 1731; 14 L Ed 2d 601 (1965), citing 1 Blackstone, Commentaries (15th ed), p 69. A second premise,

---

126; 425 NW2d 714 (1988) (T. K. BOYLE, J., concurring in part and dissenting in part).

originating with Justice Harlan, is that where there has been a finding of a violation of the constitution, a court that fails to apply the finding to cases pending on direct review is acting legislatively and not judicially. *Desist v United States*, 394 US 244, 259; 89 S Ct 1030; 22 L Ed 2d 248 (1969) (Harlan, J., dissenting).

> [W]hether a new constitutional rule is to be given retroactive or simply prospective effect must be determined upon principles that comport with the judicial function, and not upon considerations that are appropriate enough for a legislative body. [*Mackey v United States*, 401 US 667, 677; 91 S Ct 1171; 28 L Ed 2d 388 (1971) (Harlan, J., dissenting in part).]

A fortiori, the first premise does not apply where, as here, there has been no finding of a violation of the law or defendant's constitutional rights. Justice Harlan's rationale is likewise inapposite. Indeed, retroactive application of *Bass* demonstrates precisely the vice Justice Harlan sought to correct. If there is no violation of a substantive right, the Court's decision in *Bass* is a legislative and not a judicial activity. It follows that retroactive application of that policy conclusion likewise cannot be other than legislative activity. As Justice Harlan himself stated:

> [I]t is the task of this Court, like that of any other, to do justice to each litigant *on the merits* of his own case. *It is only if our decisions can be justified in terms of this fundamental premise that they may properly be considered the legitimate products of a court of law*, rather than the commands of a super-legislature. [*Desist*, 394 US 259 (emphasis added).]

Without a statement of the reasons in law why a certain result is required, the Court acts without

authority, Const 1963, art 6, § 6, and its actions may
not properly be considered the legitimate products of
a court of law. The order in *Bass* and today's action
also imposes "necessary increased costs" on local
funding units, Const 1963, art 9, § 29 (the Headlee
Amendment), further demonstrating the extent to
which the Court strays from its constitutional
responsibilities.[5]

Even more problematically for its effect on the sys-
tem, the opinion extends the newly created right to a
voir dire transcript to those defendants who "pre-
served" the issue as of May 6, 1998, without clarifying
for the circuit court judges and the Court of Appeals
what constitutes timely request and preservation.
Despite the fact that there are myriad formulations
regarding retroactivity, the opinion declines to refer-
ence a formula that could be looked to for guidance.
Instead, the Court finds that defendant Neal is enti-
tled to retroactive application because he preserved
the issue. The opinion notes seriatim that defendant
"ordered the transcript before the effective date of
the 1994 rule change, and then protested in writing
when the jury voir dire was omitted. He subsequently
argued the point in a motion for new trial in circuit
court, and raised the issue in briefs to the Court of
Appeals and this Court." *Ante* at 81-82. The Court
does not clarify whether any one, some, or all of such
actions will constitute preservation. It can be safely
hypothesized that any one might be held to do so, and

---

[5] As I noted in my dissent in *Bass*, art 9, § 29 suggests that this Court,
rather than local funding units and taxpayers, should bear the necessary
increased costs incident to automatic provision of voir dire transcripts.

that confusion will be the order of the day until the system digests the permutations of the decision.[6]

While implicitly conceding that defendant has sustained no substantive harms, the Court imposes a regimen of retroactivity that, in increasing the burden on the Court of Appeals, will delay the disposition of both civil and criminal cases. Moreover, without suggesting a distinction between applications for leave to appeal and claims of appeal, the opinion remands to the trial court to order preparation of a voir dire transcript and then extends to defendants the right to file a brief on issues that may arise from the voir dire *"within twenty-eight days after"* the defendant receives a copy of the transcript. Defendants who have received the voir dire before May 6, 1998, will also be allowed to file a supplemental brief if they "preserved" the issue. That the majority acts without oral argument, and without any examination of the burdens created by "limited" retroactivity when the Court of Appeals has by herculean effort so recently eliminated its backlog, illustrates that the consequences of today's decision are potentially even more unsettling than the order in *People v Bass, supra.*

I initially disagreed with the change in the court rule because the change would impose increased costs on local funding units. The Court's action today and in *Bass* itself eschews any balancing of the mag-

---

[6] Because the order in *Bass* and the opinion here may be claimed to be a change in law, it can also be anticipated that trial courts will be called upon to resolve motions for relief of judgment posited on requests for voir dire. MCR 6.502. The possibility highlights another problem eschewed by the majority: what to do when it is no longer possible to prepare a voir dire? Query, whether a court would attempt to settle the record, MCR 7.210(B)(2), how a record could be settled if no one remembers a problem arising, or whether error will be presumed if it cannot be.

nitude of the risk to the indigent defendant or the adversary process, consideration of the utility of the minimal good-cause requirement, the governmental interest in economy, the timely production of transcripts on appeal, and the burden on trial and appellate courts.

The critical question left unanswered by the order in *Bass* and the opinion today is to what end and at what cost[7] does the Court impose its legislative will in the garb of legal decision making? The rule of law dictates that the first commandment of any court must be that it act only within its authority with respect to the question presented. The legitimacy of judicial decision making requires that this Court do no more and no less. Because, both *Bass* and *Neal* violate this fundamental precept of constitutional government, I dissent.

WEAVER, J., concurred with BOYLE, J.

---

[7] Of the thousands of cases reviewed by this Court before adoption of the now replaced rule, error in voir dire occurred in statistically infinitesimal instances; in the overwhelming mass of cases error in voir dire did not even colorably appear.