LINCOLN v GENERAL MOTORS CORPORATION

Docket No. 113063. Argued November 8, 1999 (Calendar No. 4). Decided March 8, 2000. Rehearing denied *post*, 1289.

Arthur L. Lincoln was injured in 1966 in the course of his employment with General Motors and was left totally and permanently disabled. He was awarded worker's compensation. At the time he became disabled, the presumption of MCL 418.361(3)(g), 418.351(1); MSA 17.237(361)(3)(g), 17.237(351)(1), that a person who has lost the industrial use of both legs is disabled for a period of eight hundred weeks, was in effect. After the eight-hundred-week statutory period, the plaintiff continued to collect basic weekly benefits from his employer, and also differential benefits from the Second Injury Fund. In 1985, the fund reduced the plaintiff's differential benefits pursuant to *Lopez v Flower Basket Nursery*, 122 Mich App 680 (1982), and further reduced his benefits to recoup the overpayment during the previous year. After the decision in *Wozniak v General Motors Corp*, 198 Mich App 172 (1993), the plaintiff sought recoupment of the benefits he lost during the years when *Lopez* controlled. On appeal from the decision of a magistrate, the Worker's Compensation Appellate Commission held that the plaintiff was entitled to the benefits. The Court of Appeals, MACKENZIE and MURPHY, JJ. (WHITBECK, P.J., concurring), affirmed. 231 Mich App 262 (1998) (Docket No. 204560). The Second Injury Fund appeals.

In a unanimous opinion per curiam, the Supreme Court *held*:

MCL 418.351(2); MSA 17.237(351)(2) established a minimum benefits rate for totally and permanently disabled workers, such as the plaintiff, whose date of injury preceded July 1, 1968. The fund's internal and purely administrative determination to the contrary was error, and its persistent reliance on that determination was without support in the worker's compensation act. The interpretation of the act in *Wozniak* was always the true law, and it must be given full retroactive effect.

Affirmed.

*Kelman, Loria, Simpson, Will, Harvey & Thompson* (by *Ann Curry Thompson*) and *Randall K. Caryl* for the plaintiff-appellee.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Morrison Zack* and *Ray W. Cardew, Jr.*, Assistant Attorneys General, and *Gerald M. Marcinkoski*, Special Assistant Attorney General, for Second Injury Fund (Total and Permanent Disability Provisions).

Amicus Curiae:

*Martin L. Critchell* and *J. Walker Henry* for Michigan Manufacturers Association and Michigan Self-Insurers Association.

PER CURIAM. The plaintiff is a disabled worker whose benefits are in dispute, as the result of a series of statutory amendments and judicial decisions. The Court of Appeals affirmed a decision of the Worker's Compensation Appellate Commission, which granted the contested benefits. We affirm the judgment of the Court of Appeals, for the reasons stated by the concurring member of the Court of Appeals panel.

I

In 1966, the plaintiff suffered serious leg injuries in the course of his employment at a General Motors plant in Flint. These injuries left him totally and permanently disabled.

A person who has lost the industrial use of both legs is presumed to be disabled for a period of eight hundred weeks. This presumption, now stated in MCL 418.361(3)(g), 418.351(1); MSA 17.237(361)(3)(g), 17.237(351)(1), was in effect at the time the plaintiff

became disabled.[1] After the eight hundred weeks had passed, he continued to collect basic weekly benefits from his employer, and also differential benefits from the Second Injury Fund (SIF), as now provided in MCL 418.521(2); MSA 17.237(521)(2).

In *Eva King v Second Injury Fund*, 382 Mich 480; 170 NW2d 1 (1969), this Court considered the effect of certain statutory amendments on the differential benefits available to persons who were permanently and totally disabled.[2] The plaintiff is one of a group of benefit recipients whose situation was governed by *King*, and he is thus said to be one of "the *Eva King* people."[3]

The special status of *Eva King* people was later codified by 1980 PA 357, which added MCL 418.351(2); MSA 17.237(351)(2).[4] This measure provides:

> A totally and permanently disabled employee whose date of injury preceded July 1, 1968, is entitled to the compensation under this act that was payable to the employee imme-

---

[1] The Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*, has been amended often. For the sake of clarity, we will present current statutory language, noting history where appropriate.

[2] *King* concerned amendments enacted in 1955 PA 250 and 1965 PA 44.

[3] An *Eva King* person is someone who was totally and permanently disabled before July 1, 1968. That cutoff reflects the effective date of 1968 PA 227, which repealed MCL 412.9(a); MSA 17.159(a), which in turn had formed the basis for the ruling in *King*. The Attorney General tells us that currently there are about 360 surviving *Eva King* people.

[4] MCL 418.351(2); MSA 17.237(351)(2) marked a legislative acknowledgment of the *Eva King* people. However, the effect of the measure actually was to reduce benefits that *Eva King* people would otherwise have received as the result of the current language of MCL 418.355; MSA 17.237(355) (from 1980 PA 357 and 1982 PA 32), which raised the maximum rate of weekly compensation to ninety percent of the state average weekly wage.

diately before the effective date of this subsection, or compensation equal to 50% of the state average weekly wage as last determined under [MCL 418.355; MSA 17.237(355)], whichever is greater.

In 1968, the Legislature enacted a provision that reduces benefits by five percent each year from a person's sixty-fifth birthday until the seventy-fifth birthday. The section took effect July 1, 1968,[5] and is now found in MCL 418.357(1); MSA 17.237(357)(1). It reads:

When an employee who is receiving weekly payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his or her sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, so that on his or her seventy-fifth birthday the weekly payments shall have been reduced by 50%; after which there shall not be a further reduction for the duration of the employee's life. Weekly payments shall not be reduced below the minimum weekly benefit as provided in this act.

An issue soon arose regarding whether *Eva King* people were subject to these age-related reductions. Initially, the SIF assumed that the reductions applied only to persons injured on or after the effective date of the new measure (July 1, 1968) and that they were thus inapplicable to the *Eva King* people. However, the Court of Appeals held in 1982 that the reductions

---

[5] This provision was enacted in 1968 PA 227, after an earlier version (1965 PA 44) was held unconstitutional in *Brown v Saginaw Metal Casting Plants, Chevrolet Motor Div, General Motors Corp*, 68 Mich App 85; 241 NW2d 769 (1976).

*were* applicable. *Lopez v Flower Basket Nursery*, 122 Mich App 680, 687-689; 332 NW2d 630 (1982).

The SIF responded to *Lopez* by applying the age-related reductions to all surviving *Eva King* people. It also attempted to recoup a portion of what appeared to have been overpayments to these claimants.[6]

Without further appellate guidance, the SIF also concluded that payments to these claimants could not fall below a floor set by MCL 418.356(3); MSA 17.237(356)(3), which now provides:

> The minimum weekly benefit for 1 or more losses stated in [MCL 418.361(2), (3); MSA 17.237(361)(2), (3)] shall be 25% of the state average weekly wage as determined under [MCL 418.355; MSA 17.237(355)].

This approach was challenged by some of the *Eva King* people, but most accepted without protest the SIF's handling of this matter in the wake of *Lopez*.

One of the persons who challenged the approach taken by the SIF persuaded the Court of Appeals that it had erred in *Lopez* by holding that the age-related reduction could be applied to the *Eva King* people. *Wozniak v General Motors Corp*, 198 Mich App 172; 497 NW2d 562 (1993). In that decision, usually called *Wozniak I*, the Court of Appeals also ruled that the *Eva King* people had the benefit of the fifty-percent benefit floor of MCL 418.351(2); MSA 17.237(351)(2), rather than the twenty-five-percent floor found in MCL 418.356(3); MSA 17.237(356)(3).

The SIF did not appeal *Wozniak I*. Instead, it increased differential benefit payments for *Eva King*

---

[6] The SIF reduced the continuing payments until it had recovered a year's worth of the apparent overpayments. MCL 418.833(2); MSA 17.237(833)(2).

people to at least fifty percent of the current average weekly wage, as required by MCL 418.351(2); MSA 17.237(351)(2). The SIF refused, however, to compensate the *Eva King* people for the benefit reductions between the 1985 date when *Lopez* became final and the 1993 decision in *Wozniak I.*

This refusal was premised on several grounds, including the one-year-back rule of MCL 418.833(1); MSA 17.237(833)(1), the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2), and the belief that *Wozniak I* should not be applied for the benefit of *Eva King* people who did not seek the disputed benefits until after *Wozniak I* was decided.[7]

In *Wozniak I*, the Court of Appeals remanded the case to the WCAC for further proceedings regarding whether the SIF's repayment obligation to Ms. Wozniak (who had protested immediately) was limited by either the one-year- or two-year-back rules. The eventual result was that the two-year-back rule was found inapplicable by the WCAC (the SIF did not appeal that ruling) and the one-year-back rule was found inapplicable by the Court of Appeals. *Wozniak v General Motors Corp (After Remand)*, 212 Mich App 40; 536 NW2d 841 (1995). This is *Wozniak II.*

---

[7] Another potential defense relates to the fact that there are subclasses of *Eva King* people, and Ms. Wozniak (who was injured in 1964) and the present plaintiff (injured in 1966) belong to different parts of the larger group. As interpreted in *Rotondi v Chrysler Corp*, 200 Mich App 368, 375-379; 504 NW2d 901 (1993), the age-related reductions of MCL 418.357(1); MSA 17.237(357)(1) do apply to persons injured on or after September 1, 1965. Of course, that would include the present plaintiff. However, because we find the fifty-percent floor of MCL 418.351(2); MSA 17.237(351)(2) applicable in this case, the practical effect of the age-related reductions appears to be slight or nonexistent.

The panel in *Wozniak II* did not reach an issue that pertains to many of the *Eva King* people, including the plaintiff in the present case.

> We decline defendants' invitation to decide whether [*Wozniak I*] should be applied retroactively to employees who did not object to the benefit reduction. [212 Mich App 44.]

II

In 1993, the plaintiff filed a petition in which he sought recoupment of the benefits he lost during the years when *Lopez* controlled. On appeal from the decision of a magistrate, the WCAC held that the plaintiff was entitled to these benefits.

The SIF appealed to the Court of Appeals,[8] which affirmed the decision of the WCAC. 231 Mich App 262; 586 NW2d 241 (1998). The majority concluded that, with regard to this plaintiff, "*Wozniak I* should be given full retroactive effect in favor of those who did not initially object to the reduction of benefits pursuant to *Lopez*." 231 Mich App 269. In a concurring opinion, Judge WHITBECK agreed with the outcome, but employed a different analysis. 231 Mich App 269-315.

III

Issues concerning the interpretation and application of statutes are questions of law for this Court to

---

[8] The Court of Appeals initially denied leave to appeal. Unpublished order, issued September 11, 1996 (Docket No. 194191). This Court then remanded the case for consideration as on leave granted. 455 Mich 852 (1997).

decide de novo. *Mager v Dep't of State Police*, 460 Mich 134, 143, n 14; 595 NW2d 142 (1999); *Hoste v Shanty Creek Management, Inc*, 459 Mich 561, 569; 592 NW2d 360 (1999). Likewise, questions concerning the retroactivity of earlier judicial decisions are for this Court to decide de novo as matters of law. See, generally, *Michigan Educational Employees Mut Ins Co v Morris*, 460 Mich 180, 189-197; 596 NW2d 142 (1999), and *People v Neal*, 459 Mich 72, 80-81; 586 NW2d 716 (1998).

The issue before us is whether to apply the holding of *Wozniak I* to this plaintiff, so that he can obtain the statutory benefits that were denied him in the years following the decision in *Lopez*.[9] In resolving this question, we repeat what we said a few months ago in *Michigan Educational Employees Mut Ins Co v Morris, supra* at 189. In the course of deciding whether a 1993 decision called *Profit*[10] should be applied retroactively, we explained:

---

[9] The SIF also continues to argue that the one-year- and two-year-back rules limit its liability in this matter. However, we are satisfied with the analysis offered by the Court of Appeals:

Defendant fund argues that any retroactivity should be limited by the one-year-back rule, MCL 418.833(1); MSA 17.237(833)(1). However, this question has been conclusively [we would say "correctly"] decided in the successor case of *Wozniak II, supra*. A plaintiff's attempt to recover payments improperly withheld does not constitute an application for further compensation as defined by the statute. The two-year-back rule, MCL 418.381(2); MSA 17.237(381)(2), is inapplicable where the plaintiff has been receiving total and permanent disability benefits for an injury received before July 1, 1968. *Brecht v Save-Way Food Center*, 407 Mich 743; 288 NW2d 576 (1980). [231 Mich App 269.]

See also 231 Mich App 307 (opinion of WHITBECK, J., concurring).

[10] *Profit v Citizens Ins Co of America*, 444 Mich 281; 506 NW2d 514 (1993).

> In these companion cases, both defendants argue that
> this Court's decision in *Profit* should be applied prospec-
> tively rather than retroactively. "[T]he general rule is that
> judicial decisions are to be given complete retroactive
> effect . . . . [C]omplete prospective application has gener-
> ally been limited to decisions which overrule clear and
> uncontradicted case law." *Hyde v Univ of Michigan Bd of
> Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986).

Accordingly, the first question is whether *Wozniak I* overruled clear and uncontradicted prior case law. In turn, that leads to the question whether *Lopez* constituted a clear and uncontradicted ruling on the subject of these proceedings—the relationship among the three statutory provisions discussed in *Wozniak I*. MCL 418.351(2), 418.356(3), and 418.357(1); MSA 17.237(351)(2), 17.237(356)(3), and 17.237(357)(1). Since both MCL 418.351(2); MSA 17.237(351)(2) and MCL 418.356(3); MSA 17.237(356)(3) were enacted by 1980 PA 357 and took effect January 1, 1982, it is understandable that the *Lopez* panel did not have occasion to discuss either subsection. However, in that light, it also is evident that *Lopez* can hardly constitute a clear and uncontradicted holding with regard to the issues resolved in *Wozniak I*. We therefore agree with Judge WHITBECK that "*Wozniak I* did not 'establish a new principle of law,' as prior case law has interpreted that phrase." 231 Mich App 315.

In this Court, the SIF acknowledges that "*Wozniak I* did not overrule settled precedent," though the panel disagreed with *Lopez*. Arguing against retroactive application of *Wozniak I*, the SIF characterizes that decision as "unforeseeable." It also writes of its reliance upon *Lopez* and its fear that the administration of civil justice will be hampered by retroactive application. We appreciate these concerns, but disagree.

The language of the controlling statutes was correctly interpreted in the *Wozniak* decisions, and we see no sound reason to depart from the normal course of granting full retroactivity to a judicial decision that interprets a statute.

In the end, this complex case must be decided on the basis identified by Judge WHITBECK:

> Simply put, this issue here is not the type of first impression question that supports prospective application. As the *Wozniak I* panel found, [MCL 418.351(2); MSA 17.237(351)(2)] is quite specific while [MCL 418.356(3); MSA 17.237(356)(3)] is quite general. Because the two subsections were once part of the same amendatory act, the legislative intent was manifestly clear: [MCL 418.351(2); MSA 17.237(351)(2)] established a minimum benefit rate of fifty percent of the state average weekly wage, or the benefit rate in effect on December 31, 1969, whichever is greater, for totally and permanently disabled workers, such as Lincoln, whose date of injury preceded July 1, 1968. The fund's internal and purely administrative determination to the contrary was in error and its persistent reliance on that determination was without support in the WDCA. Applying Blackstone's formulation,[11] the interpretation of the WDCA in *Wozniak I* was always the "true law" and it must therefore be given full retroactive effect. [231 Mich App 314.]

For these reasons, we affirm the judgment of the Court of Appeals and the decision of the Worker's Compensation Appellate Commission.

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

---

[11] 1 Blackstone, Commentaries (3d ed, 1884), p 69.