**Charles JONES, Petitioner–Appellee,**

**v.**

**Dennis VACCO, Attorney General of the State of New York, Respondent–Appellant.**

**No. 1331, Docket No. 96–2839.**

United States Court of Appeals, Second Circuit.

Argued May 16, 1997.

Decided Oct. 2, 1997.

Robert M. Morgenthau, District Attorney, New York City (Mark Dwyer, Gina Mignola, Assistant District Attorneys, New York City, on the brief), for Respondent–Appellant.

Barry C. Scheck, Cardozo Law School, New York City (Jonathan H. Oberman, Jane Siegel, Cardozo Law School, New York City, on the brief), for Petitioner–Appellee.

Before: WINTER and ALTIMARI, Circuit Judges, and KEENAN, District Judge*.

* Hon. John F. Keenan, *Judge,* United States District Court for the Southern District of New York,

ALTIMARI, Circuit Judge:

The quest for justice through a fair trial frequently leads us through a complicated, confusing and often contradictory snarl of allegations. To untangle and decipher these charges, we begin with the foundational basis of the record. The importance of the record is exquisitely demonstrated by the extraordinary set of circumstances leading to this appeal.

Respondent-appellant Dennis Vacco, Attorney General of the State of New York (the "State"), appeals from a judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) granting petitioner-appellee Charles Jones' petition for a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court held that Jones was deprived of his Sixth Amendment right to counsel when the trial judge issued a ban on overnight consultation that extended over four days due to unforeseen circumstances. Finding no evidence that the ban had been rescinded and the constitutional violation "cured," the district court granted the writ of habeas corpus concluding that the state courts' affirmance of Jones' conviction was contrary to established Supreme Court precedent.

On appeal, the State challenges the district court's grant of the writ of habeas corpus. Specifically, the State contends: (1) that Jones failed to exhaust his state remedies; (2) that federal review of Jones' claim was procedurally barred; and (3) that the constitutional violation was "cured" when the trial judge rescinded the ban on consultation. We disagree and accordingly affirm the district court's grant of the writ of habeas corpus.

## BACKGROUND

### A. State Proceedings

In 1993, Jones was indicted for unlawfully entering the apartment of his employer, Marla Maples Trump, and taking various items of her personal property. He was charged with burglary in the second degree; criminal pos-

sitting by designation.

session of stolen property in the fourth degree; and criminal possession of a weapon in the fourth degree. *See* N.Y. Penal Law §§ 140.25(2), 165.45(1), and 265.01(1). In January, 1994, a jury trial commenced before Judge Richard Andrias in the Supreme Court of the State of New York, County of New York, Criminal Term, Part 63.

### (1) The Ban on Consultation

At trial, Jones testified on his own behalf. During his cross-examination on Thursday, February 10, 1994, the trial judge declared an overnight recess and issued the following order to Jones:

> The Court: All right. Now, Mr. Jones, this is a court order and [applies to] every witness. He [your attorney] is not to speak with you about ... anything because you are in the middle of cross-examination. Do you understand that?
>
> Jones: Yes, Sir.

The jury was then excused. Due to the severe weather conditions predicted for early the next morning, a brief discussion ensued between the lawyers and the judge regarding the logistics of continuing the trial the next day. The trial judge ordered Jones' attorney, Anthony Morosco, to be in court at 9:30 the next morning and later reemphasized the point:

> The Court: Mr. Morosco, I hate to see Mr. Jones go on the stand without a lawyer representing him. See you tomorrow at 9:30.

Following this exchange, Morosco, objected to the court's ban on consultation and the judge expressed confusion regarding the nature of the objection, which Morosco clarified:

> Mr. Morosco: I will, your Honor, comply with your order, but also register an exception to it.
>
> The Court: There is no exceptions [sic]. You will be here. If you want to bring your kid, you will be here.
>
> Mr. Morosco: I am not talking about that order, Judge.
>
> The Court: What?
>
> Mr. Morosco: The order that the defendant not discuss the case with his attorney

> overnight. I most respectfully, we will comply with it, but I take an exception to it.
>
> The Court: All right. As far as being here, you have to be here because they are in the middle of cross. Okay. Thank you. Have a nice evening.

The proceedings were adjourned with the understanding that they would continue the following morning. However, the next morning, a severe snowstorm struck the New York City area. Although the judge, prosecutors, defense counsel and Jones were able to get to court, some jurors never arrived. Notably, the court reporter did not arrive until after the proceedings were adjourned. Consequently, Jones' cross-examination could not continue and trial was adjourned until the following Monday.

On Monday morning, the trial resumed and Jones' cross-examination continued. The trial record contains a single reference to Friday's events:

> Mr. Morosco: For the record, I want the record to indicate that on Friday last, severe weather conditions prevented the proceedings in this case which had been contemplated on Thursday.
>
> The Court: Absolutely ... Not only is it [the record] clear, the record should say those of us who were here including you, your client, most of the jury, all right.

Following the three week trial, the jury convicted Jones of all charges, and on April 6, 1994, the trial judge sentenced Jones to one and one-half to four and one-half years in prison on the burglary count, and to concurrent lesser sentences on the remaining counts.

### (2) The State Appellate Process

Jones appealed his conviction to the New York Supreme Court Appellate Division, First Department ("Appellate Division"). Among the twelve issues raised on appeal, Jones argued that the trial judge deprived him of his right to counsel by directing Jones not to "discuss substantive matters with his attorney during the overnight recess."

Jones' brief did not explicitly assert that the ban continued throughout the weekend.

The State conceded that the overnight ban on consultation was an error, however, it raised several arguments. The State maintained: (1) that Jones' general objection was insufficient to preserve the issue for appellate review; (2) that the error was "cured" when the Friday snowstorm prevented the proceedings from continuing the next day because the trial judge did not renew his order and Jones did not assert that the ban remained in effect over the weekend; and (3) that Jones was procedurally barred from arguing that the order remained in effect over the weekend because Jones did not request clarification of the order on Friday and did not renew his objection on Monday before the proceedings resumed. Alternatively, the State asserted that Jones did question the ban during Friday's proceedings. The State offered to prove at a reconstruction hearing that "the [trial] court expressly granted defendant's request to consult with his lawyer over the three-day weekend."

Rather than filing a reply brief, Jones responded to the State's claims at oral argument asserting that the explicit language of the court's order precluded attorney-client consultation over the weekend because cross-examination had not been completed.

On May 9, 1996, the Appellate Division affirmed Jones' conviction. *See People v. Jones*, 227 A.D.2d 195, 642 N.Y.S.2d 246 (1st Dep't 1996). The Appellate Division did not explicitly address Jones' alleged denial of his right to counsel, but stated that the court had considered his claim and found it to be "without merit." *Jones*, 227 A.D.2d at 196, 642 N.Y.S.2d at 247.

Jones applied for leave to appeal to the New York Court of Appeals. In his leave letter, Jones raised the same issues on appeal that he made to the Appellate Division. He emphasized that there had been no contact between him and his attorneys since court adjourned on Thursday evening. On June 11, 1996, Jones' application for leave to appeal was denied. *See People v. Jones*, 88 N.Y.2d 937, 647 N.Y.S.2d 171 (1996).

## B. Federal Proceedings

### (1) The Petition for a Writ of Habeas Corpus

On June 27, 1996, Jones filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254·in the United States District Court for the Southern District of New York. Jones alleged that the trial court's ban on consultation for the duration of cross-examination, which lasted for four days due to unforeseen circumstances, had deprived him of his Sixth Amendment right to counsel.

The State opposed the petition principally raising the same objections made to the Appellate Division, and also maintaining that Jones failed to exhaust his state claim by failing to properly raise it on direct appeal before the state appellate court. Alternatively, and to the extent deemed necessary to establish a factual determination of the events of Friday, February 11, 1993, the State said it was prepared to prove that the state trial judge explicitly rescinded the ban on consultation on Friday morning. The State suggested that, in the interests of comity, a hearing on this matter should be held in the state courts.

In a memorandum opinion issued August 15, 1996, the district court determined that Jones had exhausted his state remedies and found no procedural bar to granting a writ of habeas corpus. However, based on the facts presented, the district court could not conclusively determine whether the trial judge rescinded the ban on consultation. Accordingly, the district court ordered an evidentiary hearing to be held in district court.

### (2) The Evidentiary Hearing

The district court heard testimony from the state trial judge, Jones' two defense lawyers and their investigator, and both prosecutors. The trial judge testified that he remembered the events of Thursday and Friday, February 10 and 11, 1994, "clearly." He claimed that after court was adjourned, he had "second thoughts" about prohibiting Jones from consulting with his attorneys, but did not remember whether he spoke to anyone about those concerns. He conceded that the Thursday night ban on consultation

constituted a violation of "black letter edict," but stated that he lifted the ban on Friday morning during a robing room conference attended by one of Jones' lawyers, Jon Kelligrew, and prosecutor Kevin Hynes, and repeated the lifting of the ban in open court in the presence of Morosco, Jones, Jones' wife, Kelligrew, and Hynes. The judge stated that, due to the court reporter's absence, nothing appeared on the record to memorialize the fact that the ban had been rescinded; and, he admitted that he made no trial notes in his benchbook or statements on the record either Friday or Monday regarding either the imposition or rescission of the ban.

The trial judge's testimony was not corroborated. Both defense counsel, Morosco and Kelligrew, and their investigator, Sylvia Escala denied that the ban was ever discussed or lifted on Friday. Prosecutor Hynes testified that he attended a robing room conference on Friday with Kelligrew and the trial judge, but could not recall whether the ban was discussed or lifted. Furthermore, he had no recollection of the ban being lifted in open court. The other prosecutor, Ms. Klein, testified that she was only in the courtroom for a period of four or five minutes, and did not recall the judge issuing any order during that time.

In its second amended order dated October 10, 1996, the district court held that the State had failed to offer substantial evidence to rebut the presumption that the official trial record is complete and accurate. While the district court warned that its holding should not be construed as a finding that the trial judge testified untruthfully, it stated that the trial judge may have made some statement regarding rescinding the ban which neither the defense nor prosecution understood. Such a statement would not constitute an explicit lifting of the ban and would not suffice to cure a violation of Jones' Sixth Amendment right. Accordingly, the district court granted Jones' petition for a writ of habeas corpus.

## DISCUSSION

### Standard of Review

■ We review a district court's grant of a writ of habeas corpus *de novo. See Maldo-*nado v. Scully, 86 F.3d 32, 35 (2d Cir.1996); *Reyes v. Keane,* 118 F.3d 136, 138 (2d Cir. 1997).

### Exhaustion

■ The State contends that Jones failed to exhaust his state remedies because his state appellate papers referred to the trial court's "overnight" ban on consultation and not that the ban remained in effect during the entire four-day adjournment.

■ It is well settled that all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. *See* 28 U.S.C. 2254(b)(1)(A); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997); *Daye v. Attorney General of New York,* 696 F.2d 186, 190 (2d Cir.1982)(en banc). At the core of the exhaustion doctrine, codified in 28 U.S.C. §§ 2254(b) and (c), is the "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye,* 696 F.2d at 191. Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must be given the opportunity to consider and correct any violations of federal law. *Id.*

■ The exhaustion doctrine is satisfied if the claim has been "fairly presented" to the state courts. *See Dorsey,* 112 F.3d at 52 (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye,* 696 F.2d at 191. The state courts will not have a fair opportunity to review the claim if material factual allegations have been omitted. *See id.* However, the basic requirement remains that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192. Citing a specific constitutional provision or relying on federal constitutional precedents

alerts state courts of the nature of the claim. *Id.*

A review of the record reveals that Jones exhausted his state remedies. In his brief to the Appellate Division, Jones asserted that the trial court's ruling deprived him of his "constitutional right to counsel" and directed the state appellate court's attention to the relevant Supreme Court precedents. Although Jones' brief referred only to the "overnight" ban on consultation, it adequately alerted the state appellate court to the constitutional dimensions of such deprivation. Jones amplified his claim during oral arguments to the Appellate Division, asserting that the ban extended through the weekend. Finally, in his leave letter to the New York Court of Appeals, Jones reiterated his claim, pointing out that the ban on consultation was event specific—until cross-examination had resumed—a time period that extended from Thursday night until Monday morning.

Accordingly, the New York State appellate courts were apprised of both the legal and factual premises of Jones' claim and had a fair opportunity to consider and correct the constitutional violation.

### Procedural Bar

The State next conflates two procedural issues in an attempt to preclude federal review of Jones' state conviction. First, the State contends that Jones defaulted his state court remedies for failure to preserve his claim that the ban on consultation extended over the weekend. The State maintains that Jones "was obligated, in the face of [the severe snowstorm], to raise this issue [on Friday] before the trial court .... " and should have renewed his objection on Monday. Second, it claims that federal review is barred because the state appellate court made an independent and adequate finding of procedural default.

### A. Default

 "[A] petitioner who procedurally defaults on his state court remedies is barred from obtaining federal habeas relief...." *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir. 1994); *see also Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989)("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto'.... "). Under New York law, the party claiming error must raise an objection. New York Criminal Procedure Law, § 470.05 states in relevant part:

> 2. For purposes of appeal, *a question of law with respect to a ruling* or instruction of a criminal court during a trial or proceeding *is presented when a protest thereto was registered,* by the party claiming error, *at the time of such ruling* or instruction *or at any subsequent time when the court had an opportunity of effectively changing the same.*

N.Y.Crim. Proc. Law § 470.05(2)(emphasis added). After the trial judge issued the order banning consultation, Jones' attorney registered a specific and timely objection. The trial judge had the opportunity, at that time, to rescind the ban on consultation, and chose not to. Jones was under no further obligation either to seek clarification of the order on Friday or to renew his objection on Monday, and the State's reliance on *People v. Torres,* 205 A.D.2d 350, 351, 613 N.Y.S.2d 171, 172 (1st Dep't 1994) and *People v. Wynn,* 176 A.D.2d 443, 574 N.Y.S.2d 350, 351 (1st Dep't 1991) is misplaced.

In *Torres,* the trial court did not make a specific ruling regarding the voluntariness of the confession and suggested that the defendant should have requested such a ruling or sought clarification of the trial court's position. *See Torres,* 205 A.D.2d at 351, 613 N.Y.S.2d at 172. Unlike the judge in *Torres,* the trial judge in this case issued a ruling on Thursday to which Jones' attorney timely objected. No clarification was needed on Friday because the plain language of that order made it clear that the ban remained in effect during cross-examination, which did not recommence until after the weekend due to the snowstorm. In *Wynn,* the defendant was obligated to renew his motion to recuse the prosecutor in light of later developments at trial. By contrast, here, the trial judge's initial ruling created the error, and a snowstorm cannot reasonably be considered "later

developments at trial" that would warrant renewal of the initial objection to the ban on consultation. *See Wynn,* 176 A.D.2d at 443, 574 N.Y.S.2d at 351.

If we were to require subsequent clarification of rulings and renewal of objections as suggested by the State, courts would be adrift in a sea of procedural posturing, unable to reach the merits. By registering a timely objection to the trial judge's order, Jones has fulfilled his obligation under New York law to preserve his Sixth Amendment claim for appeal.

## B. Independent and Adequate State Procedural Ground

█ Generally, federal habeas review of federal claims is barred "if a petitioner defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule ..." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). When a state appellate court affirms a conviction with an opinion, we cannot assume that the decision rested on a procedural default. *See Rosenfeld v. Dunham,* 820 F.2d 52, 54–55 (2d Cir.1987). Indeed, in order to preclude federal review, the last state court to render judgment must "clearly and expressly state[ ] that its judgment rest[ed] on a state procedural bar." *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir. 1996) (citation omitted).

The State urges us to adhere to the rule set forth in *Martinez v. Harris,* 675 F.2d 51, 54 (2d Cir.1982) and assume that the state appellate court's decision rested on procedural grounds. *See Rosenfeld,* 820 F.2d at 54 ("[W]hen a state appellate court affirms petitioner's conviction without opinion and the People had urged affirmance on both procedural and substantive grounds the federal habeas court will assume that the state appellate court rested its decision on petitioner's procedural failure to object."). However, the *Martinez* rule is inapplicable when, as here, an opinion is available. We are bound by the grounds stated in the opinion. *Id.* at 54–55.

In its May 9, 1996 decision and order, the Appellate Division, stated: "[w]e have considered defendant's remaining contentions and find them to be without merit." *Jones,* 227 A.D.2d at 196, 642 N.Y.S.2d at 247. Because we may not assume that the state court's decision rested on a procedural default without an explicit statement to that effect, we find that the state court considered and rejected the merits of Jones' Sixth Amendment claim. Accordingly, federal habeas review is not procedurally barred.

### Writ of Habeas Corpus

Having concluded that Jones exhausted his state remedies and is not procedurally barred from federal review, we now consider whether the district court properly granted the petition for a writ of habeas corpus.

█ A writ of habeas corpus will not be granted unless the state court adjudication of the claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated. *See Machado v. Commanding Officer,* 860 F.2d 542, 544 (2d Cir.1988).

### A. Right to Counsel

█ The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall have the assistance of counsel for his defense[1] and "stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done." *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963) (citation omitted). However, the Sixth

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. ·

Amendment right to counsel does not permit unfettered communication between the accused and his lawyer during trial proceedings. *See Perry v. Leeke*, 488 U.S. 272, 284, 109 S.Ct. 594, 601–02, 102 L.Ed.2d 624 (1989). The risk of improper coaching during cross-examination lies at the heart of such restriction.

■ In *Geders v. United States*, the Supreme Court held that an overnight ban on consultation during the defendant's testimony violated the defendant's Sixth Amendment right to counsel and constituted reversible error. *See* 425 U.S. 80, 91, 96 S.Ct. 1330, 1336–37, 47 L.Ed.2d 592 (1976). The Court reasoned that:

> [t]o the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel.

*Id.* (citation omitted).

The issue of a ban on consultation during shorter periods of time was addressed in *Perry*. There, the Court held that a ban on consultation during a "short recess" does not violate the defendant's constitutional right to counsel. *See Perry*, 488 U.S. at 284, 109 S.Ct. at 601–02. The Court recognized that normal attorney-client consultation during extended adjournments would encompass a multitude of trial-related matters including the day's testimony, but opined that one may presume that nothing but the testimony will be discussed during a "short recess." *Id; see also Geders*, 425 U.S. at 88, 96 S.Ct. at 1335. Inherent in *Geders*, and later made explicit, is the presumption that prejudice is so likely to follow a violation of a defendant's Sixth Amendment right to counsel that it constitutes a structural defect which defies harmless error analysis and requires automatic reversal. *See Brecht v. Abrahamson*, 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717–18, 123 L.Ed.2d 353 (1993); *Perry*, 488 U.S. at 280, 109 S.Ct. at 599–600; *Strickland v.*

*Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984).

The facts of this case fall squarely within the *Geders* rule and would raise no exceptional issues were it not for the unusual sequence of events resulting from the snowstorm on Friday, February 11, 1994. It is undisputed that the state trial judge issued an overnight ban which violated Jones' Sixth Amendment right to counsel under *Geders*, and we find that Jones has satisfied his burden of proof for a writ of habeas corpus. Nevertheless, the State maintains that the error was "cured" when the trial judge rescinded the ban on Friday, affording Jones the opportunity to consult with his attorney during the ensuing three-day weekend. Jones claims that the order was not rescinded.

**B. Recision of the Ban On Consultation**

The official trial record supports Jones' position that the trial judge did not rescind the order banning consultation during cross-examination. The only stenographic notation indicates that proceedings were adjourned until Monday. The record is devoid of any discussion of the court's previously issued overnight ban on consultation and whether it would continue over the weekend. The State claims that the trial judge rescinded the ban "off the record."

■ The presumption of regularity assumes that the record contains all rulings made during the trial. *See* N.Y. Jud. Law § 295; *People v. De La Cruz*, 227 A.D.2d 241, 242, 642 N.Y.S.2d 649, 650 (1st Dep't 1996); *Lipscomb v. U.S.*, 209 F.2d 831, 834 (8th Cir.1954). The proponent of an "off the record" statement must prove by a preponderance of the evidence that the statement was made. *See generally Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2d Cir.1963)(The party asserting the existence of a fact bears the burden of proving that fact.); *Junior Money Bags, Ltd. v. Segal*, 798 F.Supp. 375, 379 (E.D.La.1990), *aff'd*, 970 F.2d 1 (5th Cir.1992)(A person asserting a fact must establish that fact by a preponderance of the evidence.).

The testimony adduced during the evidentiary hearing[2] makes it quite clear that the State failed to meet its burden. Although the trial judge testified that he lifted the ban during a robing room conference with defense counsel Kelligrew and prosecutor Hynes, and again in open court before defense counsel Morosco, Jones, Jones' wife, Kelligrew and Hynes—his testimony was not corroborated: (1) defense counsel Kelligrew denied being in the robing room but stated that there was a conversation at sidebar that did not address the ban on consultation. He also stated that he did not remember the judge saying anything "at any time" about the ban being lifted; (2) defense counsel Morosco had no recollection of the ban being rescinded; (3) defense investigator Escala testified that she did not observe the trial judge tell Morosco or Kelligrew that they may speak to Jones over the weekend; (4) prosecutor Klein testified that she was in court for four to five minutes and could not recall the trial judge issuing any order; and (5) prosecutor Hynes admitted being in the robing room on Friday morning with the trial judge and defense counsel Kelligrew, but could not remember whether the trial judge lifted the ban.

The testimony is contradictory, confusing and vague, but one thing is clear—no one remembers whether the trial judge rescinded the ban that Friday morning. In addition, there were no trial notes in the judge's benchbook regarding the ban on consultation, and the trial transcript on Monday is devoid of references to Friday's proceedings, save a mention of the snowstorm and those in attendance.

While we do not believe the trial judge testified untruthfully, we recognize that the written word in the record is "black and white" evidence of what did or did not occur, whereas an individual's recollection of those same events blur into gray. This case demonstrates the validity of an old legal truism: God may know but the record must show. *See Peoples Coin Laundromat Corp. v. Beckmann*, 20 Misc.2d 867, 869, 190 N.Y.S.2d 131, 133 (Sup.1959). We find that the overnight ban on consultation was not rescinded and conclude that the snowstorm not only chilled the New York City area, but froze Jones' Sixth Amendment right to counsel.

Our constitutional rights must be respected *ab initio* and we should not rely on unforeseen circumstances to correct judicial error. Therefore, we decline to speculate whether a rescission of the ban on consultation could have "cured" a *Geders* violation. Because the state courts' adjudication of Jones' Sixth Amendment claim was contrary to clearly established federal law as determined by the Supreme Court in *Geders*, we find the district court's grant of a writ of habeas corpus appropriate.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

---

**2.** The State contends that the district court erred in holding an evidentiary hearing because Jones "failed to develop the factual basis of a claim." We disagree. In habeas cases, the district court is not limited to the state court record, and has discretion to conduct an evidentiary hearing. *See Pagan v. Keane*, 984 F.2d 61, 63–65 (2d Cir.1993); *Smith v. Atkins*, 678 F.2d 883, 885 (10th Cir.1982) ("[w]here such state court factual determinations are lacking, and are necessary to address the issue presented in the federal habeas proceeding, the district court in its discretion may order an evidentiary hearing in the federal court...."); *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963) ("[i]n every case, [the district court judge] has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.")