**Rhagi EL, Petitioner,**

v.

**Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.**

No. 98 Civ. 7564(DC).

United States District Court, S.D. New York.

June 30, 2000.

Rhagi El (a.k.a. Johnny Bast), Miami, FL, pro se.

Robert M. Morgenthau, District Attorney of New York County, by Marc Frazier Scholl, Assistant District Attorney, New York City, for respondent.

## *OPINION*

CHIN, District Judge.

*Pro se* petitioner Rhagi El petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his April 3, 1996 conviction in the Supreme Court of the State of New York, New York County, for criminal possession of a weapon in the second degree (N.Y.Penal L. § 265.03), criminal possession in the third degree (N.Y.Penal L. § 265.02(4)), assault in the first degree (N.Y.Penal L. § 120.10(3)), and assault in the second degree (N.Y.Penal L. § 120.05(4)). For the reasons set forth herein, the petition is dismissed.

**1.** Neither party submitted a complete copy of the trial transcript, and respondent's counsel represents that he has been unable to obtain the transcript. The Court nonetheless can decide the instant petition without the transcript pursuant to Rule 5 of the Rules Governing § 2254 Cases, which permits the use of a "narrative summary of the evidence" in lieu of an unavailable state court transcript. *See Stevenson v. Strack,* No. 96 Civ. 8429, 1999 WL 294805, at *1 n. 1 (S.D.N.Y. May 11,

## *BACKGROUND*
### A. *The Shooting*

The evidence adduced at El's trial[1] established that shortly after 7:00 p.m. on January 3, 1995, Thomas McCray, Jr., Ronnie Terry, George Townsend, and Keith Warren had gathered on the corner of 149th Street and Amsterdam Avenue. Several others were at the corner, including a man later identified as El. Gunshots broke out. McCray, who had his back turned toward El, heard several gunshots. Terry also heard a shot from somewhere behind him. Warren saw El holding a weapon and heard gunshots.

McCray, Terry, and Warren immediately took flight. McCray was hit by a bullet in his left calf, and was shot again in the other leg as he attempted to flee. Realizing that McCray needed assistance, Terry stopped to help McCray into a building while Warren fled the scene.

Police officers Carlos Morel and Anderson Moran were patrolling the area in a police car. The officers were stopped at a traffic light at the intersection of Amsterdam Avenue and 150th Street at approximately 7:30 p.m. when they heard gunshots and saw flashes of light coming from the corner of 149th Street and Amsterdam Avenue. As they approached the corner, Morel and Moran noticed that El remained in the area as the others ran away. The officers drove toward El, who took flight at the officers' approach.

Believing El to be the shooter, Morel and Moran followed him in their car. The officers testified that El was running in a strange manner with his hands in a semi-upright position held rigidly against his

1999); *see also Bundy v. Wainwright,* 808 F.2d 1410, 1415 (11th Cir.1987) ("If no transcript is available, a narrative summary may be furnished"). Petitioner does not contest any of the facts adduced by respondent or included in the Appellate Division's decision. The relevant portions of the record were included in the respondent's record and respondent submitted a copy of petitioner's appellate brief, which includes petitioner's summary of the pertinent facts. .

torso. El slowed down as he reached 148th Street, and the officers stopped the car and stepped out of the vehicle. They approached El on foot with their guns drawn, and Morel demanded that El stop. The officers had to make several additional demands before El finally stopped and put his hands in the air. Moran searched El and discovered an operable nine-millimeter semi-automatic pistol containing twenty-five rounds of ammunition. A ballistics examination later revealed that three shell casings, recovered from the area in which the shooting occurred, were fired from the weapon recovered from El.

## B. *State Court Proceedings*

### 1. *The Proceedings in the Trial Court*

El waived his right to be represented by counsel in his criminal trial in the Supreme Court, New York County, choosing to defend himself *pro se*. El's previously assigned counsel was appointed by the court to an advisory role. Following a jury trial, El was convicted on two counts of criminal possession of a weapon and two counts of assault.

After the verdict was taken, the trial court (Figueroa, J.) set a sentencing date and remanded the defendant. The court then made the following comments to the defendant:

> I'll speak to you quite frankly, that I [don't] know the circumstances or what was your mentality at the time that these alleged acts were perpetrated. Much is going to depend, as far as your sentence is concerned, on how you relate to the Probation Department when they interview you.
>
> I myself, being perplexed as I am, would like some explanation of the surrounding circumstances of your firing the weapon. If I don't get what I consider [a] worthy explanation, a sincere explanation, you are going to feel it on sentencing.
>
> Conversely, if you could shed some light on what happened and give me some sort of explanation—not explana-

tion, but an understanding of the situation, I will also take that into account.

> In other words, be sincere with the Probation Department. Because if you don't. I'll tell you right now, it's going to cost you. I want you to be truthful.

(Resp.Ex. D, Tr. at 877–78).

In response to the court's comments, El sought to raise a concern about the impact his statements might have on his appeal. The court told him that his chances of prevailing on appeal were "very dim":

> THE DEFENDANT: Isn't that what—wouldn't that be costly to my appeal, admitting—
>
> THE COURT: Yes. But now you have been convicted of firing that weapon indiscriminately by this jury, after what I consider a fair trial. Don't count too much on your appeal, because meanwhile you'll be doing time.
>
> Think of the [here] and now, especially at least in my view, and you can discuss this with your lawyer, when you[r] appeal is really a very dim prospect for you.
>
> There is no doubt in this jury's mind, as there is no doubt in anyone else's mind, that you fired that weapon indiscriminately and that's, in effect, what you are convicted of.
>
> You weren't convicted of the top count. And you definitely possessed a weapon.
>
> So, I don't see how you could get around those facts on appeal.
>
> So, you want to concentrate on the appeal, do so. But I think I put my position on the record. You could consider my position or not consider it.
>
> But right now I am really perplexed about what happened here.
>
> If I remain perplexed, it's going to cost you. I am not asking you—saying you have to give me an explanation, but I am perplexed and when I am perplexed, I resolve all doubt against the accused. It's simple. You don't have to do anything.

All right. You have anything else you want to say?

THE DEFENDANT: No.

(Resp.Ex. D, Tr. at 878–79).

At the sentencing hearing, the prosecutor asked the court to impose the maximum sentence. (Resp.Ex. E, Sentencing Tr. at 7). In addition to noting the seriousness of the offense and the discovery of outstanding arrest warrants for El in Florida, the prosecutor also mentioned El's response to the Probation Department as a factor the court should consider:

I recall being in court after the defendant was convicted and Your Honor telling the defendant that you thought that it would be a good opportunity for him to be honest with Probation in giving them some indication of what was going on in his mind at the time that he committed the crime. . . .

That you indicated to the defendant that he did have a right to appeal the case. That, you know, he should make a decision in that; depending on his response to Probation that you would take that into consideration.

I think it should be underscored that his statement to Probation is that he denies his guilt in this case. Which from any reasonable person's interpretation defendant's guilt is overwhelming.

(Resp.Ex. E, Sentencing Tr. at 6–7).

In his statement to the court, El offered the following arguments:

[A]s far as the gun charges, under the United States Constitution I cannot be charged with a felony because I'm not obligated to the United States Constitution. . . .

And I don't believe that the people showed an intent as far as the assault in the second. And that's what I meant when I say that the jury was biased.

I'm not denying any guilt or anything like that. But I don't feel that the People showed the intent or suggested intent, but that's only an opinion.

(Resp.Ex. E, Sentencing Tr. at 10–11).

After noting that he found the prosecutor's recommendation for the maximum sentence to be "reasonable under the circumstances," Justice Figueroa added the following comments:

The evidence against you I think was somewhat overwhelming. There was no doubt that you had this . . . assault weapon . . . which was strapped to your body.

How do you deny, I'm not asking you how could you deny, I'm just saying that rhetorically, how you could deny something like that to the Probation Department is really beyond me.

I told you at the time that you should be . . . very sincere with them. To claim complete innocence in this case is really somewhat beyond me. I think that, quite frankly, I think that you have a problem with reality coming out with a statement like that.

(Resp.Ex. E, Sentencing Tr. at 14–15).

Justice Figueroa then sentenced El to prison terms of five to fifteen years for the first degree assault and second degree weapon convictions, and two and a third to seven years for the second degree assault and third degree weapons convictions, all to run concurrently. (Resp.Ex. E, Sentencing Tr. at 17).

### 2. *The Proceedings on Appeal*

El appealed his conviction to the New York Supreme Court, Appellate Division, First Department, arguing that: (1) his waiver of counsel was invalid because the trial court failed to properly apprise him of the risks of self-representation; (2) the judge's communication with the prosecution during the trial, in the absence of El but in the presence of standby counsel, violated his right to self-representation; and (3) he was improperly penalized at sentencing in violation of his right against self-incrimination. (Resp.Ex.F). On May 7, 1998, El's conviction was unanimously affirmed. *People v. El*, 250 A.D.2d 395, 671 N.Y.S.2d 654 (1st Dep't 1998). The Appellate Division held that El had been sufficiently apprised of the risks of proceeding *pro se* and that the sentencing

claim was unpreserved and unsupported by the record. *Id.* 671 N.Y.S.2d at 654. The court further indicated that it had "considered defendant's other arguments" and determined that they did "not warrant reversal." *Id.*

On May 22, 1998, El filed a letter application for leave to appeal to the New York Court of Appeals. The letter did not assert any particular claims, but requested that the Court "consider and review all issues raised" in petitioner's Appellate Division brief. (Resp.Ex.J). In a second letter, dated June 12, 1998, El again emphasized that leave was being sought on all of the issues referenced in his Appellate Division brief. In addition, the second letter specifically focused on two issues that purportedly "especially merit[ed]" Court of Appeals review"—petitioner's exclusion from the "mid-trial sidebar" and the Appellate Division's practice of dismissing claims without providing any reasoning. (Resp.Ex.K). Leave to appeal to the New York Court of Appeals was denied on June 25, 1998. *People v. El,* 92 N.Y.2d 851, 677 N.Y.S.2d 82, 699 N.E.2d 442 (1998).

### C. *Federal Court Proceedings*

Petitioner filed the instant petition for a writ of habeas corpus on October 26, 1998, raising the same three claims that formed the basis of his appeal to the Appellate Division.

### *DISCUSSION*

### A. *Exhaustion*

Respondent contends that this Court cannot reach the merits of petitioner's waiver and sentencing claims because petitioner did not adequately present these claims in his application seeking leave to appeal. Respondent further argues that a letter referencing claims presented in lower court briefs does not fairly present those claims for review.

 The exhaustion doctrine requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To satisfy this requirement, a petitioner must present his federal constitutional claims to the highest court in the applicable state. *See, e.g., Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (citing *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) (per curiam)); *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). Furthermore, the court must be informed of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye,* 696 F.2d at 191.

The Rules of Practice for the New York Court of Appeals provide that applications for appeal "may be in letter form" and "should identify the issues on which the application is based." N.Y.Comp.Codes R. & Regs. tit. 22 § 500.10(a) (1997); *see Maddaloni v. Greiner,* No. 97 Civ. 3034, 1999 U.S.Dist. Lexis 15686 (S.D.N.Y. Oct. 7, 1999); *Jordan v. Lefevre,* 22 F.Supp.2d 259, 261 (S.D.N.Y.1998), *aff'd in part, rev'd in part on other grounds,* 206 F.3d 196 (2d Cir.2000). The Second Circuit interprets this rule to require that a petitioner explicitly present each federal claim in the application letter seeking leave to appeal. *See Grey,* 933 F.2d at 120 (determining that application consisting of petitioner's Appellate Division brief raising three claims accompanied by a letter asserting only one claim did not fairly apprise the court of all three claims). When a petitioner raises multiple issues in his brief submitted to the Appellate Division, but only argues one of those issues in the letter application to the Court of Appeals, those claims not presented in the letter to the Court of Appeals will be considered unexhausted. *Id.* at 119.

District courts within the Second Circuit are divided as to the applicability of *Grey* when a letter application incorporates, by reference, claims raised in a brief to the Appellate Division. *Compare, e.g., Maddaloni,* No. 97 Civ. 3034, 1999 U.S.Dist.

Lexis 15686, at *26 (determining that claim not specifically referred to in application letter was unexhausted); *Jordan,* 22 F.Supp.2d at 262 (holding that a letter's "passing reference" to appellate briefs, in conjunction with its lengthy discussion of a specific claim, was insufficient to put Court of Appeals on notice as to grounds for appeal not in letter application itself); *Benitez v. Senkowski,* No. 97 Civ. 7819, 1998 WL 668079, at *8 n. 7 (S.D.N.Y. Sept.17, 1998) (claim not exhausted when included in application only by reference to brief); *Marrero v. Keane,* No. 93 Civ. 3573, 1995 WL 66660, at *1 (S.D.N.Y. Feb.16, 1995) (same) *with Morales v. Miller,* 41 F.Supp.2d 364, 375 (E.D.N.Y.1999) (holding claims incorporated by reference in letter fulfill exhaustion requirement); *Manning v. Artuz,* No. 94 Civ. 3325, 1996 WL 294359, at *4 (E.D.N.Y. May 29, 1996) (same).

■ In his June 12, 1998 letter application to the New York Court of Appeals, petitioner, in addition to stating that leave was being sought on all issues, attempted to highlight the egregiousness of exclusion from what he characterized as a "mid-trial sidebar" by emphasizing that petitioner had "unequivocally stated his desire to go *pro se.*" (Resp.Ex.K). Although the inclusion of these specific claims in this second letter may have created some confusion about whether petitioner's other claims were also being presented to the Court, the June 12 letter mentioned that leave was sought on all issues in petitioner's Appellate Division brief, and there was no indication that the second letter to the Court of Appeals was intended to supersede the original May 22, 1998 letter application seeking leave to appeal. Under these circumstances, I conclude that the two letters, considered together, sufficiently alerted the New York Court of Appeals of petitioner's waiver and sentencing claims even though these claims were not specifically addressed in the second letter.

**B. *Procedural Default***

■ Respondent further asserts that because petitioner's self-representation claim was determined to be procedurally defaulted by the Appellate Division, petitioner is thus precluded from raising this claim now. If a petitioner defaults on his state court remedies, he is barred from federal habeas relief. *See Jones v. Vacco,* 126 F.3d 408, 414 (2d Cir.1997). Procedural default will bar federal habeas review unless "the petitioner can demonstrate both cause and prejudice—cause for the default and prejudice arising from imposing the bar of a default." *Strogov v. Attorney Gen.,* 191 F.3d 188, 193 (2d Cir.1999) (citing cases), *cert. denied,* —— U.S. ——, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000). A petitioner can also overcome a procedural default by demonstrating that denial of relief would "leave unremedied a 'fundamental miscarriage of justice,' in the sense that because of a constitutional violation a person who is actually innocent has been convicted and incarcerated." *Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397(1977)).

■ In dismissing the self-representation claim, the Appellate Division stated that it "considered defendant's other arguments and [found] that they do not warrant reversal." *People v. El,* 671 N.Y.S.2d at 654. Respondent's reliance on *Quirama v. Michele,* 983 F.2d 12 (2d Cir.1993), for the proposition that this dismissal rested on procedural grounds is misplaced. In *Quirama,* the Second Circuit assumed that the petitioner's failure to object during trial and sentencing constituted a default pursuant to an independent and adequate state procedural ground when the Appellate Division affirmed the lower court decision without issuing an opinion. *Quirama,* 983 F.2d at 13. This rule is inapplicable, however, when the Appellate Division issues an opinion stating the grounds of dismissal, for a state court decision that does not explicitly rest upon a procedural default should be assumed to have "considered the merits of [the defendant's] claim." *Jones v. Vacco,* 126 F.3d at 415. Accordingly, federal habeas review is not procedurally barred on this basis.

Respondent next argues that the self-representation claim was forfeited by petitioner's failure to object during the trial when the court informed petitioner of the communication and placed it on the record. Generally, failure to make a timely objection in compliance with an applicable contemporaneous objection rule constitutes an independent and adequate state ground for denying review. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). New York's contemporaneous objection rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Garcia v. Lewis,* 188 F.3d 71, 78 (2d Cir.1999) (quoting *People v. Luperon,* 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 647 N.E.2d 1243 (1995)). Petitioner's failure to object at trial thus resulted in a waiver of appellate review, *see* N.Y.C.P.L. § 470.05, subd. 2, and because petitioner failed to demonstrate cause for his default or actual prejudice resulting from the default, this claim is procedurally defaulted.

Finally, respondent contends that petitioner's sentencing claim was unpreserved and waived because he did not object at the time. New York's contemporaneous objection requirement generally includes "sentencing issues, [which] will be deemed waived on appeal in the absence of plain errors or defects affecting substantial rights." *United States v. Gomez,* 103 F.3d 249, 254 (2d Cir.1997) (quoting *United States v. Margiotti,* 85 F.3d 100, 104 (2d Cir.), *cert. denied,* 519 U.S. 940, 117 S.Ct. 324, 136 L.Ed.2d 238 (1996)). The Appellate Division held that petitioner's improper sentencing claim was "unpreserved and unsupported by the record" and that it could "perceive no abuse of discretion at sentencing." *People v. El,* 671 N.Y.S.2d at 654. The Appellate Division's finding that the claim was unpreserved constitutes an independent and adequate state ground that precludes federal habeas review absent "good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule." *See Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999) (citing *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) and *Sykes,* 433 U.S. at 87, 97 S.Ct. 2497). Petitioner has not attempted to show cause and prejudice sufficient to overcome this procedural bar, and thus his petition must be dismissed on this basis.

### C. *The Merits*

The petition must also be dismissed on the merits. A state petitioner seeking federal review of a conviction pursuant to 28 U.S.C. § 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden of showing by a preponderance of the evidence that his constitutional rights have been violated. *See Jones v. Vacco,* 126 F.3d 408, 414 (2d Cir.1997).

A writ of habeas corpus will not issue unless the state court adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). In *Williams v. Taylor,* 529 U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that § 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id.,* 120 S.Ct. at 1523. A writ may issue only if the state court decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. *See id.* Here, petition-

er's claim fails in both respects. Petitioner's three claims are discussed in turn.

### 1. *Waiver Claim*

First, petitioner contends that his Sixth Amendment right to counsel was violated because he was not properly warned of the dangers of forgoing the benefits of counsel. Respondent argues that petitioner was sufficiently warned of the dangers of proceeding *pro se* and that the trial judge's inquiry was sufficient to ensure petitioner's competency to represent himself.

■■■ Because the decision to represent oneself usually entails the relinquishment of "many of the traditional benefits associated with the right to counsel," a court must determine that a defendant has " 'knowingly and intelligently' forgo[ne] those relinquished benefits." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The Second Circuit has emphasized that the validity of a waiver depends upon "all the surrounding facts and circumstances, including the experience, background, and conduct of the accused." *United States v. Hurtado*, 47 F.3d 577, 583 (2d Cir.) (citing *United States v. Tracy*, 12 F.3d 1186, 1191 (2d Cir.1993)), *cert. denied*, 516 U.S. 903, 116 S.Ct. 266, 133 L.Ed.2d 188(1995). A court should consider "whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether the defendant understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice." *Id.* at 583 (quoting *United States v. Calabro*, 467 F.2d 973, 985 (2d Cir.1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1386, 35 L.Ed.2d 587(1973)).

■■■ While "there is no talismanic procedure to determine a valid waiver," a judge should "engage the defendant in an on-the-record discussion to ensure that [ ]he fully understands the ramifications of [his] decision." *Torres v. United States*, 140 F.3d 392, 401 (2d Cir.) (citing *Tracy*, 12 F.3d at 1192), *cert. denied*, 525 U.S.

1042, 119 S.Ct. 595, 142 L.Ed.2d 537(1998). Factors such as "defendant's education, family, employment history, general conduct, and any other relevant circumstances" should generally be included in the judge's inquiry although "there is no scripted procedure" for a proper inquiry. *United States v. Fore*, 169 F.3d 104, 108 (2d Cir.) (citations omitted), *cert. denied*, 527 U.S. 1028, 119 S.Ct. 2380, 144 L.Ed.2d 783 (1999).

■■■ In this case, the trial court's inquiry into petitioner's education and familiarity with the judicial system and court procedure was adequate to assure petitioner's capacity to intelligently choose to represent himself. The judge's inquiry revealed that although petitioner had completed only the eighth grade, he was familiar with basic court procedures and understood the function of a jury trial. (Resp.Ex. D, Tr. at 10). Petitioner also explained that he had a "very good understanding of [his] case" and that "no one [could] have the understanding of the crime [he was] charged with but [him]self." (Resp.Ex. D, Tr. at 7).

■■■ Petitioner's statements asserting his status as "a sovereign free more [sic]" entitled to a jury of his peers consisting of free Moors may have raised doubts about his ability to adequately represent himself. (Resp.Ex. D, Tr. at 3). Nevertheless, competency to waive the right to counsel merely requires that a defendant be competent to stand trial, *see United States v. Schmidt*, 105 F.3d 82, 87–88 (2d Cir.), *cert. denied*, 522 U.S. 846, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997), and petitioner was determined to be fit to proceed to trial. (Resp.Ex. C, Tr. at 26–27). A defendant is not required to be "competent to conduct [his] own defense" to be competent to intelligently choose to relinquish the right to counsel. *Schmidt*, 105 F.3d at 88 (citing *Godinez v. Moran*, 509 U.S. 389, 396–400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)).

■ Petitioner complains that the judge did not adequately warn him about the dangers of forgoing counsel but, in fact, the court warned the petitioner of the foolhardiness in representing himself. Justice Figueroa cautioned petitioner that "a person who represents himself, they [sic] have a fool for a client." (Resp.Ex. D, Tr. at 6). Despite this warning, petitioner remained adamant in his desire to represent himself. Later, Justice Figueroa further emphasized the necessity of trained counsel by warning petitioner that he would not be given "any breaks because [he was] not a lawyer" and that he would "be bound by New York State rules of evidence, and the [applicable] Penal Law." (Resp.Ex. D, Tr. at 14–15). Petitioner responded affirmatively to the judge's inquiry whether petitioner was "certain that [he] want[ed] to represent [him]self" and whether petitioner knew the risks that had been explained to him. (Resp.Ex. D, Tr. at 21).

The record demonstrates that petitioner's waiver was knowing and intelligent. The court advised petitioner of the importance of counsel and the foolishness of self-representation, and El demonstrated that he understood and accepted the implications of forgoing counsel. Accordingly, the trial court's granting of petitioner's request to proceed *pro se* did not deny petitioner his constitutional right to counsel and habeas relief on this ground is unwarranted.

### 2. *Self–Representation Claim*

■ Second, petitioner contends that the trial court violated his right to self-representation when it suggested, in the absence of petitioner but in the presence of standby counsel, that the prosecutor recall a witness. Respondent argues that petitioner's failure to object during trial effectively ratified standby counsel's participation in lieu of petitioner's presence. Furthermore, respondent claims that even if the incident could be considered an *ex parte* communication, the record reveals no erosion of petitioner's actual control over his defense nor was the jury's perception of petitioner's control diminished.

■ A criminal defendant has a Sixth Amendment right to conduct his own defense. *See Faretta,* 422 U.S. at 814, 95 S.Ct. 2525; *see also Schmidt,* 105 F.3d at 88 ("The Sixth Amendment guarantees an accused not only the right to the assistance of counsel, it also guarantees the right to proceed without counsel"). Indeed, the deprivation of the right to self-representation would likely require "automatic reversal of a criminal conviction." *Johnstone v. Kelly,* 808 F.2d 214, 218 (2d Cir.1986); *see Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (noting that "deprivation of the right to counsel ... requires the automatic reversal of the conviction because [it] infect[s] the entire trial process").

■ Although a defendant has the right to represent himself, a court may, in its discretion, appoint standby counsel. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525; *Williams v. Bartlett,* 44 F.3d 95, 100 (2d Cir.1994); *e.g., Schmidt,* 105 F.3d at 90 (mentioning that trial court properly appointed standby counsel over *pro se* defendant's objections). The court stressed to petitioner that counsel was appointed solely in a standby capacity and that counsel would not "take over." (Resp.Ex. D, Tr. at 15). On these facts, Justice Figueroa's appointment of standby counsel was certainly within his discretion.

Petitioner's right to self-representation was not violated by the sidebar conversation conducted in his absence. After Warren was questioned by the prosecution, Justice Figueroa requested, outside the petitioner's presence but in the presence of stand-by counsel, that the witness be recalled to clarify whether a weapon Warren referred to in his testimony could be identified as the specific weapon used during the shooting. (Resp.Ex. D, Tr. at 614–15). Warren testified that the gun did indeed "look[ ] similar" to the weapon used in the shooting, but he could not identify the

weapon definitively. (Resp.Ex. D, Tr. at 614–15). After the jury left the room, Justice Figueroa explained to petitioner that "it was the Court that suggested ... the recall of the witness." (Resp.Ex. D, Tr. at 641–42). Petitioner did not comment or complain about the incident.

Unsolicited participation by the court or standby counsel does not necessarily violate petitioner's right to represent himself. A defendant representing himself "must generally accept any unsolicited help or hindrance that may come from the judge who chooses to call and question witnesses." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 7, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). The Second Circuit has found that "[e]ven when standby counsel makes unsolicited remarks, a defendant's rights are not necessarily violated." *United States v.. Dyman*, 739 F.2d 762, 771 (2d Cir.1984) (finding that minimal participation by standby counsel did not violate defendant's right to self-representation when standby counsel provided unsolicited assistance to defendant in the jury's presence), *cert. denied sub nom, Spainhower v. United States*, 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985). Indeed, "[e]ven when he insists that he is not waiving his *Faretta* rights, a *pro se* defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably." *McKaskle*, 465 U.S. at 182, 104 S.Ct. 944.

The Supreme Court, in *McKaskle*, imposed certain limitations to protect the *Faretta* right against excessively intrusive participation by standby counsel.

> First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury.... Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.

*Id.* at 178, 104 S.Ct. 944. In determining whether petitioner's right to self-representation was violated, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177, 104 S.Ct. 944 (explaining that *Faretta* was concerned with defendant's affirmative right to participate in the trial, rather than with the limitations on involvement by standby counsel). The right to self-representation is eroded if "standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance." *Id.* at 178, 104 S.Ct. 944.

With respect to participation in sidebar conversations, the Second Circuit determined in *United States v. Mills*, 895 F.2d 897 (2d Cir.), *cert. denied*, 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990), that a *pro se* defendant's improper exclusion from sidebars does not constitute a *Faretta* violation when the totality of circumstances indicates that the defendant "both in fact and in the perception of the jury, [had] a fair chance to present his case in his own way." *Id.* at 905. In the instant case, there was minimal, if any, usurpation of petitioner's control by standby counsel. Standby counsel did not interfere with petitioner's ability to make decisions and retain control of the case, nor did the situation affect the jury's perception of petitioner's control over the case. As a result, there was no *Faretta* violation.

### 3. *Sentencing Claim*

Finally, petitioner claims that he is entitled to re-sentencing on the ground that the trial court violated his constitutional privilege against compelled self-incrimination. Petitioner contends that he was penalized by the trial court for his failure to provide an explanation for his conduct to the Probation Department during his pre-sentencing interview. (Pet. at

6). Respondent argues that it was not improper for the trial court to "offer a convicted criminal defendant the opportunity to explain his or her conduct in mitigation of sentence." (Resp. at 28).

The Fifth Amendment prevents an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Petitioner claims that the court's comment that petitioner should "be sincere with the Probation Department [b]ecause if you don't ... it's going to cost you" (Resp.Ex. D, Tr. at 877–78) violated his Fifth Amendment privilege by forcing him to choose between making self-incriminating statements to the Probation Department that could affect the disposition of his appeal or receiving a more severe sentence for refusing to admit his guilt to the Probation Department.

Last year, in *Mitchell v. United States,* 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), the Supreme Court held that a defendant retains the privilege against compelled self-incrimination through the sentencing phase of a criminal trial. *See id.* at 328–29, 119 S.Ct. 1307 ("In accordance with the text of the Fifth Amendment, we must accord the privilege the same protection in the sentencing phase of 'any criminal case' as that which is due in the trial phase of the same case."). The Court found that the trial court had improperly used the defendant's silence at the sentencing hearing in determining facts (quantity of drugs) that had a direct effect on the severity of the sentence imposed on the defendant. *See id.* at 319, 119 S.Ct. 1307. The Court explained that "in determining facts about the crime which bear upon the severity of the sentence," the sentencing court "may not draw the adverse inference" from the defendant's silence. *Id.* at 316–17, 119 S.Ct. 1307. The Court, however, limited the restriction to factual inferences and declined to decide "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in [the sentencing guidelines]." *Id.* at 330, 119 S.Ct. 1307.

The Second Circuit recently held that a defendant's sentence may not be enhanced for failure to cooperate with the government after conviction. *See United States v. Rivera,* 201 F.3d 99 (2d Cir.1999) (noting that *Mitchell* did not address the extent to which silence may be considered at sentencing). In *United States v. Rivera,* the Second Circuit determined that a defendant's sentence was improperly enhanced when the sentencing judge regarded "failure to come forward and to assist the government in its investigations following his conviction ... as affecting the point within the guideline range" to which defendant would be sentenced. *Id.* at 101 (quoting JA 159). The judge explicitly attributed "60 months [of the sentence] to [the defendant's] failure to assist the government postconviction." *Id.* The Second Circuit distinguished this situation from those, such as the petitioner's, where a "judge's comments regarding a lack of cooperation could be interpreted to mean only that he found the defendant to be a 'callous person, unconcerned about the injuries he inflicted on others.'" *Id.* at 102 (quoting *United States v. Klotz,* 943 F.2d 707, 711 (7th Cir.1991)).

The circumstances surrounding petitioner's sentencing are distinguishable from those in *Mitchell* and *Rivera,* where a defendant's silence or failure to cooperate with the government were used as a basis to increase a sentence. In petitioner's case, the trial court did not improperly rely on petitioner's failure to explain his actions to draw any factual inference that affected petitioner's sentence. Instead, the judge explained to petitioner, immediately following petitioner's conviction, that "if [petitioner] could shed some light on what happened and give [the judge] some sort of explanation—not explanation, but an understanding of the situation, [the judge would] also take that into account." (Resp.Ex. D, Tr. at 877). Justice Figueroa further advised petitioner: "If I remain perplexed, it's going to cost you. I am not asking you—saying that you have to give me an explanation, but I am perplexed and

when I am perplexed, I resolve all doubt against the accused. It's simple. You don't have to do anything." (Resp.Ex. D, Tr. at 879).

■ Justice Figueroa, in commenting that he would take into account any "understanding of the situation" petitioner could provide, did not compel petitioner to incriminate himself. "The whole notion of showing leniency to some deserving defendants—that is, of treating them more mildly than others—requires withholding leniency from others who appear less deserving." *United States v. Jones*, 997 F.2d 1475, 1478 (D.C.Cir.1993) (in banc). Furthermore, a defendant's manifestation of remorse and his acceptance of responsibility for his conduct are well-recognized as factors that may be considered in sentencing. *See, e.g., United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir.1994) (finding a defendant's lack of remorse to be an individual, distinctive factor that may support sentencing disparity); *Geraci v. Senkowski*, 23 F.Supp.2d 246, 247–48 (E.D.N.Y. 1998) ("A sentencing judge may properly consider a defendant's remorse, or lack thereof, in determining a sentence. Doing so does not infringe a defendant's Fifth Amendment rights."), *aff'd*, 211 F.3d 6 (2d Cir.2000). A contrite defendant is considered to be more likely to benefit from rehabilitation and is, therefore, more deserving of leniency in sentencing.

Although " '[a]ny effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment,' " *Mitchell*, 526 U.S. at 326, 119 S.Ct. 1307 (quoting *Estelle v. Smith*, 451 U.S. 454, 463, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)), Justice Figueroa made no effort to compel petitioner to testify. The judge did not threaten petitioner with additional punishment if he refused to cooperate. Justice Figueroa merely clarified that absent any explanation for his behavior, petitioner would not be granted leniency in sentencing. *Cf. Mallette v. Scully*, 752 F.2d 26, 31 (noting that judge's comment that it would be "very easy to be reasonable and lenient

if defendant were to cooperate", did not express motivation to improperly enhance sentence).

The Second Circuit has previously emphasized the "distinction between increasing the severity of a sentence for a defendant's failure to cooperate and refusing to grant leniency." *United States v. Stratton*, 820 F.2d 562, 564 (2d Cir.1987) (finding impermissible a sentencing enhancement based on the defendant's failure to cooperate with the government by naming other individuals who had been involved with the crime); *cf. Mallette*, 752 F.2d at 30 (2d Cir.1984) (commenting on the "somewhat illusory" nature of the distinction). While recognizing that "the distinction between withholding leniency and increasing a penalty is 'difficult to apply,' " *Rivera*, 201 F.3d at 101 (quoting *Stratton*, 820 F.2d at 564), I conclude that the judge's remarks taken in their totality demonstrate that any "cost" to petitioner was the refusal of leniency rather than a penalty for failure to explain conduct. Justice Figueroa appears to have been looking for a showing of remorse or some acceptance of responsibility on the petitioner's part. Although a defendant has a right to remain silent, a defendant's refusal to acknowledge any responsibility or to show any remorse in the face of clear evidence of wrongdoing is surely an appropriate factor for a sentencing judge to consider when choosing an appropriate sentence from within a range of s tatutorily-permissible sentences.

## CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is denied. The petition is dismissed and a certificate of appealability will not issue, except as to the issue of whether petitioner's constitutional right against self-incrimination was violated during the sentencing phase of the case. *See* 28 U.S.C. § 2253(c), as amended by AEDPA. This Court certifies that, to that extent only, petitioner has made a substantial, though

insufficient, showing of the denial of a constitutional right. This Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order, other than with respect to that one issue, would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.