Alphonso SAMUELS, Petitioner–Appellant,

v.

Daniel A. SENKOWSKI, Superintendent of Clinton Correctional Facility, Respondent–Appellee.

No. 99–2559.

United States Court of Appeals, Second Circuit.

Oct. 9, 2003.

Georgia J. Hinde, New York, NY, for Petitioner–Appellant.

Darien B. Taylor, Assistant Attorney General for the State of New York, for Eliot Spitzer, Attorney General, State of New York (Robin A. Forshaw, Assistant Solicitor General, and Beth Thomas, Assistant Attorney General), for Defendants–Appellees, of counsel.

Present: MINER, CALABRESI, and STRAUB, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Petitioner Alphonso Samuels appeals the district court's denial of his petition for a writ of habeas corpus. Petitioner was convicted of one count of Rape in the First Degree, New York Penal Law (P.L.) § 130.35, two counts of Sodomy in the First Degree, P.L. § 130.50, two counts of Robbery in the First Degree, P.L. § 160.15, and two counts of Criminal Use of a Firearm in the First Degree, P.L. § 265.09, and is currently serving two consecutive 8 ⅓ to 25 year sentences. The only issue certified on this appeal is the question of whether the in-court identifications of the petitioner by the victims, K.M.

and Brian M.,[1] violated Petitioner's due process rights, and if so, whether such error was harmless.

Evidence adduced at trial showed that on Nov. 12, 1980, K.M. and her fiancé, Brian M., were accosted while sitting in their car in Cunningham Park in Queens, New York. A masked man with a gun demanded money and valuables from them, and then forced them to drive to a nearby field. There, the assailant repeatedly raped and sodomized K.M., and stole additional valuables, including a brown sheepskin coat belonging to Brian M. Throughout the attack, the assailant was wearing a mask that covered the upper half of his face, but his eyes and mouth area were showing. Darkness impaired the ability of the couple to see their attacker, but there was some light in the parking lot. The field that the couple was forced to drive to was darker, but still permitted K.M. to see the features of the assailant's face and what he was wearing.

After their ordeal, the couple reported the incident to the police, describing the assailant as a thin black man, approximately 5'7" to 5'9", wearing a black ski mask, bluish pants and a light-colored jacket. In response to this and to reports of a series of very similar rape and robbery attacks, the police conducted surveillance in the park on December 10, 1980. One officer saw a light go on in a parked car with a man and woman inside. His partner heard yelling from the car, and witnessed a man who matched the description of the suspect running from the scene. The officers chased and apprehended that man (Mr. Samuels). At the time Mr. Samuels was stopped, the officers testified that he was wearing a ski hat and stocking mask. He also had on a sheepskin jacket that

---

1. In order to safeguard the victims' privacy, we use abbreviations of their names to identify them.

both witnesses later identified as belonging to Brian M. When they searched the scene the next day, the police also found a gun a few feet from where Mr. Samuels had been arrested. The day after his arrest, Mr. Samuels confessed to robbing the couple and raping K.M., and to dropping the gun when he was chased. Although the confession was not recorded or signed, it was witnessed, and the interrogating officer took verbatim notes. The defendant later recanted and attempted to have the confession suppressed, but evidence of it was admitted after a pre-trial hearing.

Although the victims made no previous attempt to identify their assailant, during the trial the prosecution obtained permission from the judge to have the defendant stand, step in front of K.M. and Brian M., and have the witnesses describe what they recognized about him. Defense counsel strenuously objected, on the grounds that he had been given no notice, and therefore was unable to minimize the suggestiveness of the in-court setting by, for example, seating the defendant somewhere other than the defense table. The district court permitted the identifications over the objections. K.M. then testified that she recognized the defendant's eyes, his mouth area, and his height, and Brian M. testified that he recognized the defendant's eyes and slender build. Both witnesses were extensively cross-examined about their ability to see the assailant in the dark, as well as about inconsistencies or omissions in their prior descriptions of him. At the close of the trial, the judge gave cautionary instructions to the jury about the in-court identifications, reminding them that they should consider all of the circumstances surrounding the identification, including the fact that the assailant was masked and that the incident occurred at night.

We review a district court's ruling on a petition for a writ of habeas corpus *de novo*. *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir.1997). Because the petitioner filed for habeas before the effective date of AEDPA, we assess his petition according to pre-AEDPA standards. *See Lindh v. Murphy*, 521 U.S. 320, 322, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); 28 U.S.C. § 2254(d) (1994) (superceded). We therefore review *de novo* pure questions of law and mixed questions of law and fact, and presume the factual findings of the state appellate courts to be correct. *See* 28 U.S.C. § 2254(d) (1994) (superceded).

In *Manson v. Brathwaite*, the Supreme Court established the general due process standard applicable to witness identifications. 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). That case concluded that "reliability is the linchpin in determining the admissibility of identification testimony," *id.* at 114, and indicated that if identification testimony leads to "a very substantial likelihood of irreparable misidentification," it must be excluded to protect defendants' due process rights. *Id.* at 116 (internal quotation marks omitted); *see also Kennaugh v. Miller*, 289 F.3d 36, 43 (2d Cir.2002) (citing same). In-court identifications of the type engaged in here can frequently be "so clearly suggestive as to be impermissible." *United States v. Archibald*, 734 F.2d 938, 942 (2d Cir.), *as modified*, 756 F.2d 223 (2d Cir.1984). Nevertheless, "[e]ven an identification at trial under circumstances that are tantamount to a showup is 'not per se inadmissible, but rather depend[s] upon the "totality of the circumstances." ' " *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir.1994) (alteration in original) (quoting *Archibald*, 734 F.2d at 942).

We need not, however, decide whether, in the case before us, the defendant's due process rights were violated by the in-

court identification, because we believe that any error that might have occurred was harmless. *See Kennaugh,* 289 F.3d at 48; *Archibald,* 734 F.2d at 943. Overwhelming evidence of defendant's guilt was presented at trial, including (a) the petitioner's confession, which was admitted after a full evidentiary hearing in the state court, and (b) the testimony of the arresting officers (i) that a gun—similar to that used in the charged crime—was found a few feet from where the petitioner was arrested, (ii) that at the time of his arrest the petitioner was wearing a ski cap and stocking mask that matched the witnesses' descriptions of the hat and mask worn by the assailant in this case, and (iii) that at the time of his arrest the petitioner also had on a jacket that the victims identified as Brian M.'s. On cross examination, the defense attorney was "able effectively to challenge the credibility and reliability" of the witnesses' in court identifications. *See Kennaugh,* 289 F.3d at 48. Importantly, the jury was also given a cautionary instruction alerting them to the importance of questioning the reliability of the identifications in view of the circumstances of the crime, darkness, etc. We conclude that any error was harmless under *Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

We have considered all of petitioner's claims and find them meritless. We therefore AFFIRM the judgment of the district court.